766 A.2d 80

**MARYLAND CORRECTIONAL INSTITUTION—Women,**

v.

**Patricia A. LEE.**

**No. 115, Sept. Term, 1998.**

Court of Appeals of Maryland.

Jan. 12, 2001.

Reconsideration Denied March 2, 2001.

Richard B. Rosenblatt, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for appellant.

Margaret Lanier, Assistant Public Defender (Michael D. Montemarano, P.A., on brief), Baltimore, for appellee.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY,* CHASANOW,** RAKER, WILNER and CATHELL JJ.

BELL, Chief Judge.

The issues this case presents are whether, where a defendant insists that there is a conflict between the pronouncement of sentence and the commitment issued to the Division of Correction ("DOC"), the DOC's failure to follow its policy requiring it to obtain correction of a commitment record, or independently interpret the transcript of a sentencing proceeding, is appropriately challenged by habeas corpus and whether the Baltimore City habeas corpus judge erred in his interpretation of the Montgomery County sentence. The Circuit Court for Baltimore City held that habeas corpus is the proper vehicle and thus issued the writ and granted the relief requested by the appellee, Patricia A. Lee. Before addressing that issue, however, we must determine whether the appellant, the Maryland Correctional Institution–Women, has the right to appeal the Circuit Court's decision. We shall hold that the appellant has the right to appeal. Furthermore, we conclude that habeas corpus is the appropriate way to raise the issue of the appellee's right to be released from custody. Neverthe-

---

* Rodowsky, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

** Chasanow, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

less, we believe and, therefore hold, that the Circuit Court erred in construing the appellee's sentence as concurrent. Accordingly, we shall reverse the judgment of the Circuit Court.

I.

The appellee was convicted, together with her husband and co-defendant, Le Bon Walker, in the Circuit Court for Montgomery County of conspiracy to commit felony theft and nine counts of felony theft. Both were sentenced as follows:

"On Count number one for the offense of conspiracy to commit theft over the value of $300, the sentence will be three years in the Department of Corrections.

"Count number two, felony theft from B.F. Saul, the sentence of this court will be three years in the Department of Corrections, concurrent to Count No. One.

"Count number three, felony theft from Chevy Chase Savings Bank, the sentence of this court will be three years in the Department of Corrections, and that will be consecutive to counts one and two.

"On Count number four, felony theft from American Home Funding, the sentence will be three years in the Department of Corrections, consecutive to count three.

"On Count number five, felony theft from Sigfried and Margo Temp, the sentence of the court will be three years in the Department of Corrections, consecutive to count four.

"On Count number six, the conviction for felony theft from Edward and Ping Waa, the sentence of the court will be three years in the Department of Corrections, consecutive to count number five.

"On Count number seven, felony theft from Republic Federal Savings Bank, the sentence of this court will be three years in the Department of Corrections, consecutive to count number six.

"On Count number eight, for the felony theft from Trust Bank, Federal Savings Bank, the sentence of this court will

be three years in the Department of Corrections, consecutive to count seven.

"On Count number nine, the charge of felony theft from Edward I. and Ping Waa sentence of this court will be three years in the Department of Corrections, concurrent to count no. six.

"On Count number ten, felony theft from Crestar Bank, the sentence of this court will be three years in the Department of Corrections, consecutive to count no. eight."

The trial judge then said:

"The sentences will be served concurrently with the sentence imposed by Judge Weinstein earlier this week. Mr. Walker will receive credit for 390 days he has already served. Mrs. [Lee] Walker will receive credit for 380 days already served."

Although initially reflecting some confusion, the Commitment Record ultimately issued to the Commissioner of Correction pursuant to this sentencing stated the total time to be served as 24 years, "to be run ... concurrent with any other outstanding or unserved sentence," i.e. the 5 year sentence,[1] earlier imposed by Judge Weinstein, that had commenced on October 5, 1993.[2]

1. The 5 year sentence is the subject of an unreported opinion of the Court of Special Appeals, *Lee v. State*, September Term 1994, No. 486 (1994), *cert. denied*, 337 Md. 90, 651 A.2d 854, *motion for reconsideration denied*, 337 Md. 439, 654 A.2d 448 (1995).

2. The Commitment record dated February 2, 1994, stated that the appellee was to serve an aggregate term of 24 years of incarceration from the date of sentencing, February 2, 1994, "consecutive to the last sentence to expire of all outstanding and unserved Maryland sentences," referencing the Weinstein sentence, to which it was said to run concurrently. A second Commitment Record was issued on July 22, 1994. It removed the reference to the sentence being consecutive, noting instead that it was "to be run concurrent...." The third Commitment Record, dated January 23, 1997, amended the previous Commitment Record to reflect a total sentence of 27 years and to refer to "sentences," rather than "sentence." The fourth Commitment Record, dated January 24, 1997, changed the total sentence from 27 years to 24 years. Finally, the fifth Commitment Record, dated February 4, 1997,

The DOC maintains a "commitment manual," containing its policies and guidelines with respect to commitments. Chapter 90–130 of the manual addresses the Division's policy for resolving ambiguous sentences. It provides, as relevant:

*"What general guidelines should be followed when staff encounter an ambiguous sentence?*

"Since Maryland Law provides that ambiguous sentences must be construed in favor of the inmate, when a sentence is found to be ambiguous, commitment staff shall seek clarification from the sentencing judge. Upon receipt of a transcript indicating a different sentence than the one recorded on the commitment record, staff shall immediately request an amended commitment from the court of jurisdiction. When the foregoing action cannot be accomplished, then the Division should obtain necessary documentation and defend the Division's action before the appropriate court. However, in all cases, the Division will exercise good faith efforts to calculate sentences in accordance with applicable policy and available information."

The appellee presented a copy of the transcript of the sentencing proceeding to the DOC, maintaining that her commitment should be amended to reflect, rather than an aggregate of 24 years, a sentence of only three years, concurrent to the 5 year sentence imposed previously. According to the appellee, the trial judge's last sentencing comment indicated that she intended that there be a concurrent relationship between the sentences imposed for the counts in the indictment as well as between those sentences and the sentence imposed by Judge Weinstein.

Aware of Chapter 90–130, a member of the DOC's commitment staff wrote to Judge Harrington, who confirmed that the period of incarceration ordered was 24 years, run concurrently with the sentence imposed the day before by Judge Weinstein. Thus, she replied that, "[t]he Commitment Record, issued on

---

stated, "Sentences to run concurrently to sentence imposed by Judge Weinstein."

February 4, 1997, accurately reflects the sentence structure imposed by the Court at the sentencing hearing on February 2, 1994." In that letter, she further advised:

"This same issue was the subject of a Defendant's Motion for Reconsideration of Sentence heard on June 7, 1996. After duly considering Ms. Lee's argument and the opposition of the State of Maryland, the motion was denied. The ruling was not appealed."

The appellee then initiated an Administrative Remedy Proceeding at the institution, eventually filing, pursuant to Md. Code (1957, 1997 Repl.Vol.) Art. 41, § 4–102.1,[3] an inmate grievance with the Inmate Grievance Office. The grievance was dismissed for failure to state a cognizable claim, specifically because interpretation of a sentencing transcript is an issue for the court, rather than the DOC. The appellee appealed that decision to the Circuit Court for Anne Arundel County. Affirming, that court indicated that the appropriate avenue of redress was post conviction. A petition for writ of habeas

---

**3.** Maryland Code (1957, 1997 Repl.Vol.) Art. 41, § 4 102.1(c) states:

"Any person confined to an institution within the Division of Correction, or otherwise in the custody of the Commissioner of Correction, or confined to the Paxutent Institution, who has any grievance or complaint against any officials or employees of the Division of Correction or the Paxutent Institution, may submit such grievance or complaint to the Inmate Grievance Office within such time and in such manner as prescribed by regulations promulgated by the Office. If, and to the extent that, the Division of Correction or the Paxutent Institution has a grievance or complaint procedure applicable to an inmate's particular grievance or complaint, and if the Office deems such procedure reasonable and fair, the Office may by regulations require that such procedure be exhausted prior to the submission of the grievance or complaint to the Office."

Section (d) reads:

"When a grievance or complaint is submitted to the Inmate Grievance Office, the executive director or the director's designee shall preliminarily review the grievance or complaint. If upon such preliminary review the grievance or compliant is determined to be on its face wholly lacking in merit, it may be dismissed, by the executive director or the director's designee without a hearing or without specific findings of fact...."

Currently, provisions regarding the disposition of grievances and complaints by inmates are codified in the Md.Code (1999) §§ 10–206–10–210 of the Correctional Services Article.

corpus was then filed by the appellee in the Circuit Court for Montgomery County. It was heard by Judge Weinstein, who denied it.

 The appellee next filed, in the Circuit Court for Baltimore City, a petition for writ of habeas corpus, in which she challenged the legality of her continued incarceration by the DOC. More particularly, the petition alleged that the DOC had failed to apply its policies concerning the interpretation of ambiguous sentences. Following a hearing on the petition,[4] the hearing court issued a memorandum opinion agreeing with the appellee. Noting the language used to pronounce the sentence, particularly the use of the mandatory, "will," it determined that, whatever may have been intended, ten concurrent sentences of three years each had been imposed on the appellee by the Montgomery County Circuit Court. The hearing court thus interpreted the orally pronounced sentence. The effect of following the intention of the court—that the sentences be consecutive—rather than the construction required by the oral pronouncement—that the sentences be concurrent—, it concluded, citing *Wilson v. State*, 45 Md.App. 675, 677, 415 A.2d 605, 605 (1980), would be to modify the appellee's sentence upward and thus render it illegal. The hearing court found that the DOC had failed to abide by its own procedures for clarification of ambiguous commitments:

"This Court finds that the Respondent has failed to properly calculate the Petitioner's sentence to show that she is serving each of the individual, three (3) year sentences concurrently with the five (5) year previously imposed sentence by Judge Weinstein, that based on the language expressed by the judge from the bench in accordance with

---

4. The appellant was not present or represented at the hearing. There is some disagreement between the parties as to why. The appellant maintains that it was never served, as Maryland Rule 15–308 requires. On the other hand, the appellee insists that the appellant was served at every stage of the proceedings and, by failing to appear at the habeas corpus hearing, has waived its right to appeal. We reject the appellee's waiver argument. As the appellant points out, "... Maryland Rule 8–131(a) does not bar consideration of issues presented in the final order and judgment of the circuit court."

its own policy. Respondent's failure has resulted in denial of Petitioner's Due Process rights as well as denial of equal protection of the law by denying her the right to be considered for parole upon reaching one fourth (¼) of the five (5) year sentence, which she was eligible for as of 1995."

It vacated the appellant's aggregation of the appellee's sentences and ordered that they be

"served concurrently and calculated accordingly from October 5, 1993, as a matter of law, in Montgomery County Circuit Court case number 63521, notwithstanding the intent of Judge Harrington to impose consecutive sentences, but as otherwise orally pronounced."

The appellant appealed this judgment to the Court of Special Appeals. We issued the writ of certiorari on our own motion prior to any proceedings in that court.

## II.

Before addressing the merits of the case sub judice, we must consider the appellee's motion to dismiss. The appellee argues that the appellant's appeal is prohibited by Md.Code (1957, 1996 Repl.Vol., 2000 Cum.Supp.) Article 27, § 645A (e). She reasons:

"The finding of the court below was that the petition challenged Appellee's illegal confinement, based upon the due process and equal protection violations in the failure of Appellant to follow its guidelines. This illegal confinement, based upon an illegal sentence contained in Appellee's commitment record, falls squarely *without* the language of the exception."

Even if the appellant's appeal in this case is not prohibited by § 645A (e), the appellee further maintains, the appeal should be dismissed nevertheless because of the appellant's undisputed failure to pursue appellate review through an application for leave to appeal. To reach that conclusion, the appellee notes that the requirement in § 645–I, asserts that "habeas and postconviction proceedings often are *in pari materia*," and relies on the statement in *Gluckstern v. Sutton*, 319 Md.

634, 662, 574 A.2d 898, 912 (1990), that the Court's interpretation of the exceptions clause as a grant of a right to appeal in habeas corpus cases in certain instances, is "consistent with the purpose of the Post Conviction Procedure Act." She also contends that

"If Appellant's view is correct, the purpose of the Act would be vitiated, since every inmate necessarily would choose to avail him or herself of habeas, a procedure with an automatic appeal provision, rather than postconviction, mandating an application for leave to appeal."

Section 645A (e) provides:

"(e) The remedy herein provided is not a substitute for, nor does it affect any remedies which are incident to the proceedings in the trial court or any remedy of direct review of the sentence or conviction. Except as provided in subsection (a)(3) of this section, a petition for relief under this subtitle may be filed at any time, except that where an appeal has been taken from the judgment of conviction to the Court of Special Appeals, it shall not be necessary to appoint counsel or conduct a hearing or take any action whatsoever on the petition, until the judgment of conviction becomes final in the Court of Special Appeals. No appeals to the Court of Appeals or the Court of Special Appeals in habeas corpus or coram nobis cases, or from other common-law or statutory remedies which have heretofore been available for challenging the validity of incarceration under sentence of death or imprisonment shall be permitted or entertained, except appeals in such cases pending in the Court of Appeals on June 1, 1958, shall be processed in due course. Provided, however, that nothing in this subtitle shall operate to bar an appeal to the Court of Special Appeals (1) in a habeas corpus proceeding instituted under § 2–210 of Article 41 of this Code or (2) in any other proceeding in which a writ of habeas corpus is sought for any purpose other than to challenge the legality of a conviction of a crime or sentence of death or imprisonment therefor, including confinement as a result of a proceeding under Title 4 of the Correctional Services Article."

This Court extensively considered and interpreted this section in *Gluckstern* in resolving a challenge to the State's right of appeal in that case. In that case, Sutton was committed to the Patuxent Institution in 1975 as a defective delinquent, pursuant to Md.Code (1957, 1976 Repl.Vol.), Art. 31B § 9 after having been convicted of two counts of first degree murder and two counts of use of a handgun in the commission of a felony or crime of violence, occurring in 1974, and sentenced to concurrent terms of life plus twelve years. *See* 319 Md. at 638, 574 A.2d at 899. At that time parole eligibility for Patuxent inmates was controlled by Md.Code (1957, 1997 Repl.Vol.), Art. 31B, § 13(d), which, as relevant, provided:

"If the institutional board of review as a result of its review and reexamination of any person believes that it may be for his benefit and for the benefit of society to grant him a ... parole from the institution for defective delinquents, it may proceed to arrange for such ... parole.... The board may attach to any such ... parole such conditions as to it seem wise or necessary...."

Significantly, there was no requirement that the Board's parole decision be approved by any other person or entity. *See id.* at 640, 574 A.2d at 900. Subsequently, in 1982, the General Assembly enacted Ch. 588 of the Acts of 1982, which amended Art. 31B, § 11(b)(2), relating to paroles by the Institutional Board of Review of Patuxent Institution, to require that "[a]n eligible person who is serving a term of life imprisonment shall only be paroled with the approval of the Governor." *Id.* at 643, 574 A.2d at 902.

The Institutional Board of Review of Patuxent Institution having twice voted in favor of his parole and the Governor having twice refused to approve the parole, Sutton filed a petition for habeas corpus requesting his release on parole in accordance with the decisions of the Institutional Board of Review, arguing that the gubernatorial approval requirement, as applied to him, violated the ex post facto clauses of the Maryland Declaration of Rights and of the United States Constitution. *See id.* at 644–45, 574 A.2d at 901–02. The Circuit Court for Baltimore County agreed with Sutton and

granted the writ, *id.* at 645, 574 A.2d at 903, and, therefore, ordered another parole hearing, at which the Institutional Board of Review would proceed "solely on the facts and evidence as they existed when the Institutional Board of Review originally considered Petitioner for parole in October of 1984." *Id.* at 646, 574 A.2d at 904. It also ordered that the Board's decision was not subject to the Governor's approval.

Sutton challenged the right of Patuxent to appeal the Circuit Court judgment, arguing, *inter alia.*, that no appeal lay. Rejecting Sutton's argument, Judge Eldridge, speaking for the Court explained:

"In our view, the language added to the Post Conviction Procedure Act in 1965 was intended to authorize appeals in habeas corpus cases such as the case at bar. The language of Art. 27, § 645A(e), emphasizes that the Post Conviction Procedure Act shall not operate to bar an appeal

'(1) in a habeas corpus proceeding instituted under § 2–210 of Article 41 of this Code or (2) in any other proceeding in which a writ of habeas corpus is sought for any purpose other than to challenge the legality of a conviction of a crime or sentence of death or imprisonment therefore, including confinement as a result of a proceeding under Article 31B of this Code.'

"Clause (2) of the above-quoted language obviously applies to a case like the present one. Otherwise, the clause would be meaningless.

"Immediately prior to the 1965 enactment, only two statutes provided for appeal or leave to appeal in habeas corpus proceedings: what is now Art. 41, § 2–210, relating to extradition cases, and Ch. 6 of the Acts of 1880, relating to orders based on the unconstitutionality of the statute under which the prisoner was convicted.[5] Clause (1) of the 1965

---

**5.** Codified at Md.Code (1974, 1998 Repl.Vol.) § 3–706 of the Courts and Judicial Proceedings Article. It provides:

"(a) Memorandum to be filed after discharge.—If a person is released or discharged by a judge under a writ of habeas corpus on the ground that the law under which the person was convicted is uncon-

language encompasses the extradition cases, and therefore, those cases are not the object of clause (2). Automatic appeals under Ch. 6 of the Acts of 1880 are also not the object of clause (2). Ch. 6 of the Acts of 1880 covers only constitutional challenges to criminal convictions and Art. 31B examination or defective delinquency proceedings. Clause (2) relates to appeals in cases 'other than' those challenging criminal convictions or Art. 31B proceedings. Consequently, contrary to the view of the Court of Special Appeals, the purpose of clause (2) was not to make it clear that the Post Conviction Procedure Act did not abolish appeals in habeas corpus cases involving extradition and cases under Ch. 6 of the Acts of 1880. Neither category of cases was encompassed by clause (2). Clause (2) has meaning only if construed as granting a right of appeal in a habeas corpus case not involving a challenge to the criminal conviction and sentence or the Art. 31B proceeding which led to the prisoner's confinement."

319 Md. at 661–62, 574 A.2d at 911. Thus, as the appellant argues, this Court, in *Gluckstern*, determined that the 1965 amendment to § 645A(e) of the Post Conviction Procedures Act provides authorization for appeals in a proceeding where "a writ of habeas corpus is sought for any purpose other than to challenge the legality of a conviction of a crime or sentence." 319 Md. at 661, 574 A.2d at 911.

stitutional, in whole or part, the judge shall file a memorandum within five days after the release or discharge and transmit with original papers in the case to the clerk of the Court of Special Appeals.

"(b) Opinion of Court of Special Appeals.—(1) The Court of Special Appeals shall consider the memorandum and the original papers at the earliest feasible time and render its opinion.

"(2) The opinion has the same effect as an opinion filed in a case formally heard and determined by the court on an appeal."

Unlike § 645A (e), the appeal under § 3–706 is an automatic one and does not require a party to file a notice of appeal. The plain language of § 3–706 reveals that it is intended as an appeal only when a person is released or discharged "on the ground that the law under which the person was convicted is unconstitutional." *See Gluckstern*, 319 Md. at 653, 574 A.2d at 907.

That the appellee's petition for habeas corpus challenged only the legality of her confinement and not the legality of her sentence is patent. She admits as much in her Motion to Dismiss, when she acknowledges that "[t]he finding of the court below was that the petition challenged Appellee's illegal confinement, based upon the due process and equal protection violations in the failure of Appellant to follow its guidelines." To be sure, she later states that the illegal confinement is based on an illegal sentence; however, the legality of the sentence is presented, if at all, only indirectly, as it relates to the ambiguous sentence argument and analysis. She has never contended that the court was without authority to render consecutive sentences aggregating 24 years; her only contention has been that the court did not, in fact, do so, which is what makes her confinement unlawful.

The Memorandum Opinion of the hearing judge also makes clear that what was before the court in the petition for habeas corpus was the legality of the appellee's confinement and not of her sentence. He states, by way of context:

"This is the petitioner's first application regarding the calculation of her credits during incarceration and her third application regarding 'oral pronouncement' of her sentences. The Petitioner's main contention under this present application is the continued incarceration of Petitioner, based on the Division of Correction's policies and procedures that are not being adhered to in the calculation of her sentence structure, which has caused Petitioner's continued illegal confinement based on her 'oral pronouncement' of sentences."

Moreover, the court's more particular statement of the appellee's argument confirm that this is so:

"Petitioner asserts that t he Respondent [Warden] has refused to properly calculate Petitioner's sentence to show that the Petitioner is serving each of the individual three (3) year sentences concurrently with the five year previously imposed sentence by Judge Paul H. Weinstein. Petitioner further states that the Division of Corrections [sic] has

acknowledged that her Commitment Record does not reflect the 'language expressed by the Judge from the bench,' yet they have refused to calculate Petitioner's sentence in accordance with their policy 90–132–1.

"Petitioner further asserts that the Division of Corrections [sic] has allegedly aggregated the individual three (3) year sentences in direct violation of their own policy as outlined in Chapter 90–130–5 of the 'Commitment Manual.'

"The policy in question states that when an ambiguity is found in one's sentence, as is the case in Petitioner's sentence structure, the Division of Corrections [sic] is required by law to calculate the sentence in favor of the inmate. The Division of Corrections [sic] has failed to do so and is therefore illegally detaining Petitioner past her mandatory release date, based on her 'orally pronounced' sentence."

But most telling of all is the petition for habeas corpus itself. In it, the appellee states most emphatically that "[t]he validity of the conviction *is not* an issue of this Habeas Corpus petition ." The petition further avers:

"The only issue before the Court is the continued incarceration of Petitioner, based on the Division of Correction's policies and procedures that are not being adhered to in the calculation of her sentence structure, which has caused Petitioner's continued illegal confinement, based on her 'oral pronouncement' of sentences and the service thereof. Said policies and procedures within the 'Commitment Manual' of the Division of Correction has created a 'Liberty Interest Right' that is being violated by Respondent."

Moreover, throughout the petition, the appellee focused on the appellant's responsibility, by virtue of its policies and procedures, which she identifies as being contained in a "Commitment Manual," to have calculated the appellee's sentence consistent with her interpretation of the law governing sentencing. Finally, in referring to the prior filed petition concerning this sentencing, the petition noted that it was

"based on her sentence structure as 'orally pronounced' from the bench, but not as it related to the Division of

Correction's responsibilities based on their own policies and procedures when they have been unable to obtain a Commitment Record the same as Petitioner's 'orally pronounced' sentences."

■ Because the habeas corpus petition did not challenge the legality of the sentence, rather only the propriety of the DOC's actions with respect to the appellee's commitment and confinement, the appeal by the appellant is authorized. Accordingly, the appellee's motion to dismiss is denied.

### III.

We turn to the merits. As we have seen, the issue is whether failure by the DOC, consistent with its Commitment Manual, to seek clarification of, and indeed correct, a commitment record, in conflict with the sentence announced orally by the Circuit Court, which a defendant alleges is improper, is cognizable via habeas corpus.

■ Maryland Code (1974, 1995 Repl.Vol.) § 3–702(a) of the Courts and Judicial Proceedings Article, states,

"Person who may apply for writ.

"(a) Petition. A person committed, detained, confined, or restrained from his lawful liberty within the State for any alleged offense or under any other color or pretense or any person in his behalf, may petition for writ of habeas corpus to the end that the cause of the commitment, or constraint may be inquired into."

Thus, habeas corpus is an appropriate method to challenge the lawfulness of an underlying conviction and detention. Moreover, our cases make clear that

"courts will entertain an inmate's petition for habeas corpus when the plaintiff alleges entitlement to immediate release and makes a colorable claim that he or she has served the entire sentence less any mandatory credits."

*Maryland House of Correction v. Fields,* 348 Md. 245, 261, 703 A.2d 167, 175 (1997). *See Lomax v. Warden, Maryland Correctional Training Center,* 356 Md. 569, 574, 741 A.2d 476,

479 (1999); *State v. McCray,* 267 Md. 111, 146, 297 A.2d 265, 283 (1972) (inmates did not allege or establish that they were "entitled to be released or discharged from confinement"). It is now well settled, *Lomax,* 356 Md. at 575, 741 A.2d at 479; *Gluckstern,* 319 Md. at 663–64, 574 A.2d at 912, that the court need not choose simply between discharge of the defendant and the denial of all relief, but may "tailor relief as justice may require." *Gluckstern,* 319 Md. at 663, 574 A.2d at 912, *quoting Dowd v. U.S. ex rel. Cook,* 340 U.S. 206, 209–210, 71 S.Ct. 262, 264, 95 L.Ed. 215, 219 (1951).

The appellant argues that the Circuit Court erred in permitting the petitioner to use habeas corpus to challenge its procedures with respect to the maintenance of commitment records. It points out first that, notwithstanding the Circuit Court's opinion requiring the DOC to take action upon discovering an ambiguity in a defendant's sentence and the commitment record, the DOC may not change the sentence. Indeed, the manual upon which the court relies, it submits, does not suggest otherwise, requiring only that, in that event, the appellant inquire of the sentencing court, seek an amended commitment to resolve the ambiguity and, failing successful clarification, document its resolution efforts. As the appellant sees it, a petition for writ of habeas corpus will lie solely to challenge the lawfulness of detention. Thus, it continues, assuming an ambiguity between the sentence and the commitment record, its failure to inquire or act consistently with the manual does not convert a lawful detention into an unlawful one. The appellant directs our attention to Md. Rule 4–351(b), which provides that "[a]n omission or error in the commitment record or other failure to comply with this Rule does not invalidate imprisonment after conviction." Continuing, the appellant asserts:

"Any claim of failure by the Division of Correction to follow the procedure set forth in the commitment manual as they relate to questioning the accuracy of the commitment record is wholly unrelated to the lawfulness of the confinement. So long as the issue presented is unrelated to the lawfulness of confinement, it is not cognizable in a habeas corpus action

... rather such allegations constitute a grievance or complaint against employees or officials of the Division and are within the jurisdiction of the Inmate Grievance Office."

Citing Md.Code (1957, 1997 Repl.Vol.) Art. 41, § 4–102.1 and *McCray,* supra, 267 Md. at 131–32, 297 A.2d at 275–76, for the proposition that "complaints of prisoners with regard to their treatment by correctional authorities do not entitle the prisoners to relief under a writ of habeas corpus, and complaints as to prison management cannot be considered on habeas corpus."

The appellee submits that the DOC guidelines concerning ambiguous sentences "make[ ] clear that the obligation of [the DOC] is to applicable and controlling Maryland law, and not to the court that imposed the sentence." Thus, she acknowledges, the discovery of an ambiguity between the commitment and the oral pronouncement of sentence requires the DOC first to seek an amended commitment. She maintains, however, that:

> "If the court refuses to correct the commitment to conform with the language that it used, thereby making clear that the obtaining of 'an amended commitment ... cannot be accomplished' in fulfillment of its mandate under the law and its own guidelines, [the DOC] then must apply the sentence according to the sentencing language, and defend this action in court."

Recognizing that a constitutionally protected liberty interest, once established, may not be abrogated without due process, citing *Hewitt v. Helms,* 459 U.S. 460, 471–72, 103 S.Ct. 864, 871, 74 L.Ed.2d 675, 681 (1983), in effect, therefore, rather than guidelines, the appellee views the Commitment Manual as mandatory and, in fact, as in the case of a state statute containing explicit mandatory language creating a right and limiting administrative discretion, as creating a constitutionally protected liberty interest. Appellee's brief, quoting *McCrary v. Jetter,* 665 F.Supp. 182, 184 (E.D.N.Y.1987), in turn *quoting Anderson v.City of New York,* 611 F.Supp. 481, 489 (S.D.N.Y.1985).

The Circuit Court interpreted the DOC guidelines set forth in the Commitment Manual at 90–130–5 as requiring the DOC, in accordance with law, to calculate the sentence in favor of the inmate. It concluded:

> "The Division of Correction[ ] has failed to do so and is therefore illegally detaining Petitioner past her mandatory release date, based on her 'orally pronounced' sentence. When calculating Petitioner's sentence based on its policy in Chapter 90–113 and 90–130, outlined in the 'Commitment Manual,' and in accordance with the holdings in *Robinson v. Lee,* 564 A.2d 395, 317 Md. 371 (1989) and *Hopkins v. Md. Inmate Griev. Comm'n,* 40 Md.App. 329[, 391 A.2d 1213] (1978), each of those individual, three (3) year sentences would have expired and the five (5) year sentence would have exceeded the mandatory release date.[3]"

---

[3]*Hopkins* states that the Division of Correction's failure to comply with its own rule is a violation of the due process clause. *Hopkins v. Maryland Inmate Grievance Comm'n,* 40 Md.App. 329, 391 A.2d 1213 (1978).

That conclusion followed from, and, indeed was dependent on, the court's prior interpretation of the appellee's sentence as consisting of "ten (10) individual, three-year (3) sentences [that] must be served concurrently with the five (5) year sentence imposed by Judge Paul H. Weinstein," the hearing court having read the trial court's statement summarizing the effect of the sentences she had just imposed as retracting the earlier expressed intention to impose a series of concurrent and consecutive sentences totaling 24 years.

It thus appears that the Circuit Court agreed with the appellee, that the DOC guidelines are mandatory and provided a liberty interest. We believe this interpretation is a stretch of what the DOC guidelines require.[6] Nevertheless, it is clear

---

**6.** The mere existence of a Commitment Manual containing guidelines governing the handling of ambiguous and conflicting sentences does not create a liberty interest. *See Patuxent Inst. Bd. of Review v. Hancock,* 329 Md. 556, 583, 620 A.2d 917, 930 (1993) ("The fact that a parole system exists does not, in and of itself, give rise to a constitution-

that habeas corpus is the proper vehicle to obtain review of the lawfulness of the petitioner's continued detention. To be sure, as the appellant argues, and the appellee concedes, the lawfulness of the appellee's confinement is not at issue. On the other hand, the appellee did allege that she was being detained by the appellant "long after her expiration date and mandatory release date of her 'orally pronounced' sentences, which are the only lawful sentences known to law." Moreover, notwithstanding that they are directed to and involve only the appellant's failure to act consistently with its guidelines, if credited, the appellee's arguments demonstrate just what she alleges, that she is being illegally detained. Even more

ally protected liberty interest in parole release."); *Bd. of Pardons v. Allen*, 482 U.S. 369, 373, 107 S.Ct. 2415, 2418, 96 L.Ed.2d 303 (1987). While administrative rules or regulations, guidelines or even accepted practices may provide such an interest, *see* Neil D. Cohen and James J. Gobert, *The Law of Probation and Parole*, §§ 3.13–3.16, at 133–140 (1983), the administrative rules or regulations, guidelines or accepted practices must be such as to engender more than a "mere anticipation or hope of freedom." *See Morrissey v. Brewer*, 408 U.S. 471, 482 n. 8, 92 S.Ct. 2593, 2601 n. 8, 33 L.Ed.2d 484, 495 n. 8 (1972), *quoting U.S. ex rel. Bey v. Conn. Bd. of Parole*, 443 F.2d 1079, 1086 (2nd Cir.1971), *vacated as moot*, 404 U.S. 879, 92 S.Ct. 196, 30 L.Ed.2d 159 (1971). There is a critical and substantial difference between being deprived of a liberty one has, as in parole, and being denied a conditional liberty that one desires, *Greenholtz v. Inmates of Neb. Penal and Correctional Complex*, 442 U.S. 1, 9, 99 S.Ct. 2100, 2105, 60 L.Ed.2d 668, 676 (1979). In order for procedural due process protections to extend to the appellee, the guidelines must afford her more than a mere expectation of liberty.

Contrary to the Circuit Court decision, the applicable commitment guideline is not so clear or so limiting of the DOC's discretion as to create a liberty interest in the appellee, or any other inmate. A plain reading of the DOC policy reveals that what is in fact required is that the DOC seek to clarify the inconsistency through reference from the sentencing judge ("commitment staff shall seek clarification from the sentencing judge"), and request an amended commitment where reference to the sentencing judge affirms that there is an inconsistency. Nowhere does DOC policy mandate that the incorrect sentence contained in the commitment papers be upheld ("[I]n all cases, the Division will exercise good faith efforts to calculate sentences in accordance with applicable policy and available information."). Nowhere does DOC policy state that its responsibility is to determine or modify a sentence.

At most, the DOC guidelines impose a duty to investigate and follow-up.

important, the court has so interpreted the appellee's sentence.

Having determined that the lawfulness of the appellee's continued detention entitled her to seek relief by way of habeas corpus, we turn to consider whether the Circuit Court's grant of that relief was correct. We hold that it was not.

As we have seen, the hearing court's focus purportedly was on the inaction of the DOC, its failure to comply with the provisions of its commitment manual and to seek correction of an ambiguous sentence. That failure, the court concluded, resulted in the denial to the appellee of due process and equal protection of the law. Despite this focus, as the appellant contends, the "linchpin" of the decision was the hearing court's interpretation of the sentence, as orally pronounced, imposed upon the appellee by Judge Harrington. That interpretation is inconsistent with the interpretation given the sentence by the sentencing judge when denying the appellee's motion for reconsideration of sentence, by the Circuit Court for Montgomery County, reviewing it on habeas corpus, and by the Court of Special Appeals, when reviewing the identical sentence on an appeal by the appellee's co-defendant.[7] Moreover, the hearing court's interpretation is simply wrong.

---

**7.** As indicated in the statement of facts, the appellee and her co-defendant, Le Bon Bruce Walker, received the identical sentence and, in fact, were sentenced together and at the same time. On appeal to the Court of Special Appeals, Mr. Walker raised the issue with which we are presented in this case. That court interpreted the sentence as follows:

"The sentencing judge pronounced a detailed sentence on convictions totaling 10 counts, some of which she made concurrent and some consecutive. The total sentence is 24 years. At the conclusion of sentencing, the judge stated, 'the sentence will be served concurrently with the sentences imposed by Judge Weinstein earlier this week.' Apparently, appellant takes this to mean that all of the 10 sentences imposed are concurrent. We, however, do not agree. It is clear to us that, after imposing the sentences totaling 24 years, the judge simply made those sentences concurrent with a 5 year sentence already being served."

*Le Bon Bruce Walker v. Bishop L. Robinson,* September Term 1997, No. 182, 119 Md.App. 823 (January 22, 1998).

The appellee does not now contend, and has never contended, that the count by count pronouncement of sentence by Judge Harrington did not result in the imposition of, or was not intended to impose, eight consecutive sentences totaling 24 years. Rather the crux of her contention, with which the habeas corpus court agreed, is that the sentencing judge's subsequent summary comment trumped that result, if not the intention. Such a contention has merit only if "sentences" in the summary comment referred to the sentence on each count individually, in effect ordering that each be served concurrently both with the sentence to which they were referenced and with each other. The rationale for so interpreting "sentencing" is derived from the Court of Special Appeal's unreported opinion in *Glenn Vincent Rhodes v. State.* In that case, after imposing several sentences consecutive to each other, the trial judge stated, "all of these sentences will commence as of January 5, 1982." The post conviction court denied relief concluding that, reading the proceedings as a whole, the trial court intended to impose the aggregate sentence. The intermediate appellate court did not agree. It granted the defendant's application for leave to appeal the denial of post conviction relief and remanded for correction of the defendant's sentence. The court reasoned:

"In this case we conclude that regardless of what the trial judge may have had in mind, he did say that all of the sentences were to begin January 5, 1982. This is clear and unambiguous. It had the effect of making all of the sentences concurrent."

■ That is not this case. The trial court said nothing that expressly or by implication would indicate that each of the 3 year sentences was to be served concurrently with the previously imposed sentence. As the appellant points out, "[t]he sentencing judge established an intricate scheme of consecutive sentences that totaled 24 years," which she made to run concurrently with another sentence. The use of the plural when describing the relationship between that sentencing scheme and the sentence with which it is to be concurrent is not the equivalent of commencing the service of each of

multiple sentences on a date certain. We agree with the trial judge's analysis, on the basis of which the appellee's motion for sentence modification was denied:

"In *Rhodes*, there is one judge sentencing on three separate counts. The person before the judge is not serving any other sentence at the time. He specifically gave a commencement date for all of the sentences in the separate cases to be a certain day. The Court of Special Appeals, in my opinion, focused very dramatically on that particular language.

"I distinguish the events in this case from that case. We had one case per defendant with multiple counts. Clearly, there is no ambiguity. There is no ambiguity to be resolved in the favor of the defendants because they understood the sentence. At the time they were serving a sentence imposed in a different case by another judge on another day. I think it is distinguishable."

Critical to the appellee's case is that the sentence as pronounced and the sentence as reported in the commitment records is ambiguous. But the intention of the sentencing judge to impose a 24 year sentence was clear when the sentence was announced and has remained clear throughout these proceedings. Moreover, the sentence announced was not, when announced, and is not now, ambiguous. Consequently, there has not been in this case any modification of the appellee's sentence, not to mention one that adversely impacts the appellee. Accordingly, the habeas corpus court erred in modifying the appellee's sentence from the 24 years the trial court imposed to 3 years.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.*