807 A.2d 708

**Muhsin R. MATEEN, a/k/a Jerome Allen Williams,**

**v.**

**Jon GALLEY, Warden, et al.**

**No. 1836, Sept. Term, 2001.**

Court of Special Appeals of Maryland.

Sept. 11, 2002.

Muhsin R. Mateen, Cresaptown, for appellant.

Scott S. Oakley, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief) Baltimore, for appellee.

Submitted SALMON, KENNEY, and ADKINS, JJ.

ADKINS, Judge.

Muhsin R. Mateen, appellant, has been incarcerated on a first degree murder conviction since September 9, 1972. In a 1997 petition for a writ of habeas corpus, Mateen presented what we view as two distinct grounds for habeas relief: (1) that his 50 year sentence for first degree murder was illegally increased to life with all but 50 years suspended, and (2) that he has been and is now being denied meaningful consideration for parole, pre-release security classification, work release, and family leave, as a result of what has become known as Maryland's "life means life" policy.[1] In this appeal, Mateen asks us to hold that the Circuit Court for Baltimore City erred in denying his habeas petition because he stated cognizable claims for relief based on both his "sentence increase" and "meaningful consideration" complaints, and because he was entitled to, but did not receive, a hearing on those habeas claims.

We conclude that the change in Mateen's sentence was a permissible correction of an illegal sentence, but that this correction should have been made on the record after notice to Mateen. Nevertheless, we also conclude that the failure to hold a sentence correction hearing was harmless in the unique circumstances of Mateen's case. As to the "meaningful consideration" claims, we hold that Mateen has not stated any cognizable claim on which he would be entitled to habeas relief.

---

1. Mateen identified five "issues" in his habeas petition:
 1. The ambiguity in sentencing must be resolved in his favor;
 2. He was "deprived of effective and meaningful parole consideration based upon merits" as a result of the "life means life" policy;
 3. His removal from the pre-release system was an "ex post facto violation;"
 4. The Parole Commission's increase in the interval between his parole hearings, which resulted from the "life means life" policy, was another "ex post facto violation;" and
 5. The DOC is using the "life means life" policy as an excuse to deprive [him] of the opportunity to participate in pre-release, work-release, and family leave programs.

## FACTS AND LEGAL PROCEEDINGS

On November 17, 1972, the Circuit Court for Baltimore City convicted Mateen of first degree murder in a bench trial.[2] He was sentenced to a life term with the possibility of parole, and committed to the custody of the Department of Corrections ("DOC").

On October 20, 1981, however, a post conviction court ordered that Mateen be re-sentenced, because the sentencing judge had failed to consider suspension of a portion of that sentence as an another sentencing alternative. We affirmed the post conviction order.

On March 19, 1982, Mateen appeared for re-sentencing before Judge Marshall A. Levin, the same judge who imposed his original sentence. Mateen's habeas petition focuses on what happened at this re-sentencing hearing. There is no transcript of the hearing. The court's commitment record of March 19, 1982, however, states that the announced sentence was "Fifty (50) years." Similarly, the DOC's "Sentence And Detainer Status Change Report" dated April 6, 1982, states: "Sentence reduced on 3–19–82 to 50 yrs. from Life[.]"

Enter the Maryland Parole Commission. More than seven months after the re-sentencing hearing, by letter dated October 28, 1982, the chairman of the Parole Commission wrote to Judge Levin, requesting clarification as to

> whether this commitment [record] is correct since the Annotated Code of Maryland mandates [that] if a person is found guilty of First Degree Murder the sentence must be life imprisonment. Was it your intention to sentence [Mateen] to life imprisonment and suspend· all but 50 years or was [Mateen] found guilty of a lesser count and sentenced to 50 years incarceration? . .

By letter dated November 3, 1982, Judge Levin responded as· follows: "Please forgive my inartistic sentencing. It was my intention to sentence him to life and suspend all but fifty

---

**2.** After this conviction, Mateen legally changed his name from "Jerome Allen Williams."

years." On November 16, 1982, the DOC issued another sentence change report, stating that Mateen's "sentence now reads: Life—suspend 50 yrs." In the remarks section, it explained why: "Enclosed you will find copy of letter rec'd from Judge Levin explaining change of sentence."

From that point in time, the DOC and the Parole Commission treated Mateen as a "lifer," which, as detailed below, has had significantly negative consequences for Mateen's efforts to obtain parole and a pre-release security classification, and to participate in work release and family leave programs during his incarceration. Pointing to these consequences, Mateen seeks habeas relief against the Governor, the Secretary of the Department of Public Safety and Correctional Services, the Commissioner of Correction, the Chairperson of the Maryland Parole Commission, and the Warden of Western Correctional Institution.[3]

## DISCUSSION

Before addressing the merits of Mateen's habeas petition, we must resolve two threshold issues.

First, the State argues that "Mateen's claims were not cognizable under the circuit court's limited habeas corpus jurisdiction." It contends that Mateen instead must pursue his "sentencing ambiguity" claims through a motion to correct illegal sentence under Md. Rule 4–345, in which the State's Attorney has the opportunity to participate. In addition, the State asserts, Mateen's appeal should not be considered be-

---

**3.** In the ensuing litigation, including in their appearance in this Court as appellees, these respondents have been represented jointly by the Assistant Attorney General for the Department of Public Safety and Correctional Services. Because some of the respondents that Mateen named in his habeas petition no longer hold these positions, their successors have been substituted. At times, we shall refer to appellees collectively as "the State." Alternatively, when addressing Mateen's specific complaints, we refer to certain of them by their title or institution. In addition, we will add other facts and review other proceedings as they pertain to our discussion of the issues.

cause no appeal lies from the denial of a habeas petition challenging the legality of a sentence.

We disagree with the State's narrow reading of appellant's habeas petition. In Part I, we conclude that it is an appealable habeas challenge on both claims raised in the habeas petition.

Second, Mateen argues that this Court must vacate the habeas court's order denying his petition because he was entitled to, but did not get, a hearing on the petition. We disagree, and explain why in Part II of this opinion.

In Parts III and IV, we address the substance of Mateen's habeas claims.

# I.

## Propriety Of Habeas Relief

### A.

### Confinement Under An Increased Sentence

Md. Rule 4–345 limits the court's revisory power over legal sentences, but preserves plenary power over illegal sentences.

(a) **Illegal sentence.** The court may correct an illegal sentence at any time.

(b) **Modification or reduction—Time for.** The court has revisory power and control over a sentence upon a motion filed within 90 days after its imposition ... (2) in a circuit court, whether or not an appeal has been filed. Thereafter, the court has revisory power and control over the sentence in case of fraud, mistake, or irregularity.... The court may not increase a sentence after the sentence has been imposed, except that it may correct an evident mistake in the announcement of a sentence if the correction is made on the record before the defendant leaves the courtroom following the sentencing proceeding....

(d) **Open court hearing.** The court may modify, reduce, correct, or vacate a sentence only on the record in open

court, after hearing from the defendant, the State, and from each victim or victim's representative who requests an opportunity to be heard. . . . If the court grants the motion, the court ordinarily shall prepare and file or dictate into the record a statement setting forth the reasons on which the ruling is based.

An inmate's claim that his sentence is illegal as a result of substantive legal errors by the sentencing court should be redressed through a direct appeal or a motion to correct the sentence on the grounds of illegality.[4] *See State v. Kanaras,* 357 Md. 170, 185, 742 A.2d 508 (1999). In contrast, an inmate's claim that his incarceration is illegal because of the illegal actions of the Commissioner of Corrections or the Maryland Parole Commission may be redressed in a civil habeas corpus proceeding. *See id.*

The State asserts that "Mateen's claims were not cognizable under the circuit court's limited habeas corpus jurisdiction" because "[a]n inaccurate commitment record does not require release on *habeas corpus,* it only requires correction of the commitment record." In support, it cites *Lewis v. Warden, Maryland Penitentiary,* 209 Md. 625, 120 A.2d 194, *cert. denied sub nom. Lewis v. Pepersack,* 351 U.S. 911, 76 S.Ct. 706, 100 L.Ed. 1445 (1956); *Carter v. Warden, Maryland Penitentiary,* 210 Md. 657, 124 A.2d 574, *cert. denied,* 352 U.S. 900, 77 S.Ct. 136, 1 L.Ed.2d 89 (1956); and Md. Rule 4–621

---

4. "An appeal may be taken from a final order in a habeas corpus case only where specifically authorized by statute." *Gluckstern v. Sutton,* 319 Md. 634, 652, 574 A.2d 898, *cert. denied sub nom. Henneberry v. Sutton,* 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 331 (1990)(reviewing authorized grounds for habeas corpus relief). Maryland's Post Conviction Procedure Act (the "Act"), *codified at* Md.Code (2001), section 7–101 *et seq.* of the Criminal Procedure Article ("CP"), permits appeals from habeas corpus proceedings "in which a writ of habeas corpus is sought for a purpose other than to challenge the legality of a conviction of a crime or sentence of death or imprisonment. . . ." CP § 7–107(b)(2)(ii). In *Maryland Correctional Inst. v. Lee,* 362 Md. 502, 514, 766 A.2d 80 (2001), the Court of Appeals confirmed that the Act "provides authorization for appeals in a proceeding where 'a writ of habeas corpus is sought for any purpose other than to challenge the legality of a conviction of a crime or sentence.' "

regarding correction of clerical mistakes in records of a criminal proceeding.

These authorities, however, address only what a court may do when a commitment record contains a clerical error. Without a transcript of the March 19, 1982 re-sentencing hearing, there is no documentary basis upon which the habeas court or this Court could possibly make a finding that the "Fifty (50) years" sentence stated in the March 19, 1982 commitment record was merely a clerical error by the courtroom clerk in recording the sentence, rather than an error of law by the judge in pronouncing it. Given this uncertainty, we cannot ignore the latter possibility. For the reasons set forth in Part III, we therefore assume that the 50 year sentence was the product of judicial error.

The State also argues more generally that Mateen's habeas petition and appeal improperly challenge the legality of his sentence, rather than the legality of his confinement. We disagree with that characterization. Mateen specifically asserts that his sentence was improperly increased as a result of the "illegal" actions of the Parole Commission and the DOC— *i.e.,* corresponding with the sentencing judge and then altering his sentence on the basis of the judge's off-the-record, *post hoc* explanation of his subjective sentencing "intention." He points to the DOC's 1982 sentence change report, which cites the sentencing judge's response to the Parole Commission's request for "clarification," and the DOC and Parole Commission's subsequent treatment of him as a lifer without affording him notice or a hearing regarding the sentence change, as proof that he is being confined illegally by the DOC and the Parole Commission, under a sentence that was illegally increased. In these circumstances, we conclude that Mateen has challenged the legality of his incarceration under an increased sentence, rather than merely challenging the legality of the sentence itself.

*Maryland Correctional Inst. v. Lee,* 362 Md. 502, 766 A.2d 80 (2001), supports our conclusion. Lee contested a commitment record indicating that she had been sentenced to eight

consecutive three-year terms, totaling 24 years of incarceration, to be served concurrently with a previous five year sentence. She alleged that the sentencing judge had sentenced her to eight concurrent three-year terms, totaling only three years of incarceration, to be served concurrently with the five year sentence.

In an effort to persuade the DOC that her new sentences were to run concurrently rather than consecutively, Lee presented the DOC with a transcript of her sentencing hearing. She argued that the sentencing judge's comments indicated that all of her sentences were to be served concurrently. The DOC's "commitment manual" provided that

> "[s]ince Maryland Law provides that ambiguous sentences must be construed in favor of the inmate, when a sentence is found to be ambiguous, commitment staff shall seek clarification from the sentencing judge. Upon receipt of a transcript indicating a different sentence than the one recorded on the commitment record, staff shall immediately request an amended commitment from the court of jurisdiction. When the foregoing action cannot be accomplished, then the [DOC] should obtain necessary documentation and defend the [DOC's] action before the appropriate court. However, in all cases, the [DOC] will exercise good faith efforts to calculate sentences in accordance with applicable policy and available information."

*Id.* at 507, 766 A.2d 80. In accordance with that policy, a member of the DOC's commitment staff contacted the sentencing judge. The judge confirmed his intent to impose a 24 year term, to be served concurrently with the five year term. The DOC accepted the sentencing judge's interpretation of his oral sentencing pronouncement, and revised its sentence report accordingly.

Lee argued that the DOC's decision to confine her for consecutive terms was illegal, because it violated the DOC's own policies and pushed back her parole eligibility date. She filed an inmate grievance, arguing that the DOC was obligated to follow its policy of resolving ambiguous sentences in favor

of the inmate. The DOC dismissed that grievance on the ground that "interpretation of a sentencing transcript is an issue for the court, rather than the DOC." *Id.* at 508, 766 A.2d 80. Lee appealed the dismissal. The circuit court affirmed, holding that the proper means of redressing Lee's complaints was via a post conviction proceeding.

Accordingly, Lee filed a habeas petition asserting that "the DOC had failed to apply its policies concerning the interpretation of ambiguous sentences." *Id.* at 509, 766 A.2d 80. Agreeing with Lee, the hearing court concluded that regardless of the sentencing judge's subjective intent, the effect of his words had been to order that the three-year terms would be served concurrently. The DOC's decision to follow the sentencing judge's *post hoc*, off-the-record interpretation of his oral pronouncement, rather than his actual words at the sentencing hearing, effectively "modif[ied] the ... sentence upward and thus render[ed] it illegal." *Id.* In doing so, the court ruled, the DOC also had failed to abide by its own procedure for resolving ambiguous sentences, and consequently had denied Lee her due process and equal protection rights to be considered for parole upon reaching one fourth of the five year sentence, an eligibility date that had already passed. *See id.* at 509–10, 766 A.2d 80. The hearing court ordered that Lee's new sentences were to be served concurrently, and that her commitment period and parole eligibility date must be recalculated accordingly.

The DOC appealed. Lee moved to dismiss the appeal, arguing that it was not allowed because the allegedly "illegal confinement, based upon an illegal sentence contained in [the] commitment record, falls squarely *without* the language of the exception" in section 645A. *Id.* at 510, 766 A.2d 80.

The Court of Appeals rejected that argument, finding that the habeas petition properly challenged the legality of Lee's continued confinement under an allegedly ambiguous sentence. *See id.* at 522, 766 A.2d 80. The Court concluded that Lee did not contest the validity of her conviction, nor the authority of the sentencing court to render consecutive sen-

tences; "her only contention has been that the court did not, in fact, do so, which is what makes her confinement unlawful." *Id.* at 515, 766 A.2d 80. "Because the habeas corpus petition did not challenge the legality of the sentence, rather only the propriety of the DOC's actions with respect to [her] commitment and confinement," Lee was "entitled . . . to seek relief by way of habeas corpus." *Id.* at 517, 522, 766 A.2d 80. The DOC, in turn, was entitled to appeal the decision on that petition. *See id.* at 522, 766 A.2d 80.

We find *Lee* analogous to this case, even though Mateen has not distinguished between challenges to the legality of a sentence and challenges to the legality of confinement under an ambiguous sentence, as Lee did in her habeas petition. Notwithstanding the differences in pleading, there are sufficient *factual* similarities in the habeas challenges made by Mateen and Lee. Like Lee, Mateen offered documents to show that after the sentencing hearing, without notice or hearing, the sentencing judge interpreted his oral sentencing pronouncement by explaining his subjective intent to impose a sentence that differed from the sentence set forth in the commitment record. *See id.* at 506, 766 A.2d 80. Like Lee, Mateen also alleged and established, through the DOC's sentence change reports and Parole Commission documents, that the DOC and Parole Commission relied on the sentencing judge's *post hoc,* off-the-record explanation of his subjective sentencing intent in treating Mateen's sentence as a life sentence instead of a 50 year sentence. *See id.* at 509, 766 A.2d 80. We conclude that Mateen, like Lee, effectively contends that the court did not sentence him to the life term recognized by the DOC and Parole Commission, which is what makes his continued confinement under the life sentence unlawful. *See id.* Thus, his petition challenges the legality of his confinement by the DOC, and of his parole consideration by the Parole Commission, under an allegedly ambiguous and illegally increased sentence, rather than merely challenging the legality of the life sentence itself. *See id.* at 515, 766 A.2d 80. For the same reasons the DOC prevailed in obtaining an appeal in *Lee,* we conclude that Mateen was entitled to

petition for habeas relief and to appeal the denial of such relief.

In doing so, we also reject the State's contention that the State's Attorney must be a party to this litigation in order to resolve the sentencing question raised by Mateen. The interpretation of Mateen's sentence requires an objective inquiry into the sentencing record. The State's Attorney cannot change or add to that record in order to "explain away" any holes, discrepancies, or ambiguities. Moreover, for the reasons set forth in Part III, we conclude that no argument offered by the State's Attorney was necessary to resolve this issue.

### B.

### "Meaningful Consideration" Claims

■ As to Mateen's separate claims that, even if he is a lifer, he is being denied meaningful consideration for parole, pre-release, work release, and family leave, we conclude that these claims also may be redressed in habeas proceedings. As explained in Part IV, the inherent purpose of these "meaningful consideration" claims is to challenge the legality of confinement, not the legality of a conviction or sentence.

■ "The relief under a petition for habeas corpus is not limited to the release of the prisoner. 'Habeas corpus actions may be maintained where the relief available is the ordering of a proceeding or hearing which may lead to the petitioner's release.' " *Pollock v. Patuxent Inst. Bd. of Review*, 358 Md. 656, 668, 751 A.2d 496 (2000) (quoting *Lomax v. Warden, Maryland Correctional Ctr.*, 356 Md. 569, 575, 741 A.2d 476 (1999)). When an inmate has been denied parole, allegedly as a result of the ex post facto application of a law, habeas relief may be appropriate in the form of an order for a new parole hearing. *See, e.g., id.* at 669, 751 A.2d 496 (ordering new hearing regarding parole revocation); *Gluckstern v. Sutton*, 319 Md. 634, 664, 574 A.2d 898, *cert. denied sub nom. Henneberry v. Sutton*, 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 331 (1990)(ordering new parole hearing).

## II.

### Denial Of Habeas Petition Without A Hearing

 Mateen's habeas petition did not travel the usual path through the courts. He filed his *pro se* petition on October 30, 1997. It was not until August 1, 2000,[5] however, that the Circuit Court for Baltimore City issued a show cause order requiring the Governor to respond to the petition. That show cause order mistakenly reversed the dates for service of the order and filing of the State's response to the petition, requiring the State to file a response on August 31, before October 1, the date by which Mateen was required to serve the show cause order. Mateen had the right to serve and "file a reply to the response within 30 days after service of the response[.]"

On September 7, 2000, the State filed a motion to extend time for its response, pointing out the apparent inversion of the service and response dates in the show cause order. The court granted the motion, extending the State's response time until October 15, 2000, and giving Mateen 30 days thereafter to file his reply.

On October 17, 2000, the State filed a response, but the caption of that response listed the case number incorrectly. That error was remedied by an October 20 filing of a "corrected copy" of the response.

In its response, the State asked the court to summarily deny and dismiss Mateen's petition without a hearing, pursuant to Md. Rule 15–303(e)(2)(A), which provides that the court may deny a habeas petition without a hearing if "the judge finds from the petition, any response, reply, document filed with the petition or with a response or reply, or public record that the individual confined . . . is not entitled to any relief." The State cited a number of reasons that Mateen " 'is not entitled to any relief' ":

- The date of Mateen's release to mandatory supervision was not until May 22, 2008.

---

**5.** The reason for the delay was not addressed in the parties' briefs.

- The matter of the change in Mateen's sentence "should be addressed . . . to the sentencing court in a proceeding in which the State's Attorney has the opportunity to participate."
- The matter of his removal from the pre-release system has been resolved by *Lomax v. Warden,* 356 Md. 569, 741 A.2d 476 (1999), and *State v. Kanaras,* 357 Md. 170, 742 A.2d 508 (1999).
- The matter of Mateen's security classification, and any change in classification policy, falls within the DOC's discretion, according to Maryland Code (1999), section 9–103(b)(1) of the Correctional Services Article ("CS"), and cannot be challenged as an ex post facto violation because such policies are not "laws" and the changes were not imposed to punish inmates.
- The matter of Mateen's denial of parole despite the Parole Commission's 1994 recommendation requires judicial review.
- Mateen's challenge to his removal from work release and family leave programs is without merit because such a matter "is entrusted to the sound discretion of the Commissioner of Correction," under CS section 3–801.
- Mateen did not exhaust his administrative remedies against the DOC through the Inmate Grievance Office, as required by CS sections 10–206 and 10–210(a), and Maryland Code (1974, 1998 Repl.Vol.), section 5–1003 of the Courts and Judicial Proceedings Article ("CJ").

On October 31, 2000, before Mateen's 30 day opportunity to reply had expired, the court denied the petition and dismissed the action, "pursuant to Rule 15–303(e)(3)(A), on the basis that 'the individual confined or restrained is not entitled to any relief.'" The record does not reveal why the court ruled prematurely on Mateen's petition.

Without knowledge of the court's order, on November 15, 2000, Mateen, now represented by counsel, filed his reply to the State's response. The State then filed a sur-reply on November 27, 2000, also without knowledge of the order.

By letter dated July 31, 2001, Mateen's counsel wrote to the judge who denied and dismissed Mateen's petition. Counsel explained that he had "received on July 11, 2001, from the Office of the Attorney General, a copy of the ... Order den[ying]" Mateen's petition. "The Office of the Attorney General advises that it received the Court's Order on December 13, 2000, but we never received a copy from chambers or the Clerk's Office." He asserted that "we are aggrieved" by the order because the court did not consider Mateen's timely reply, which was filed after the order, and Mateen lost his right of appeal due to the lack of notice. He asked the court to exercise its revisory powers under Md. Rule 2–535(b) by reissuing and refiling its order *nunc pro tunc* so that Mateen could appeal. The Attorney General did not oppose the request. The court granted the request for limited relief, by order dated September 28, 2001. Mateen, once again acting *pro se*, filed this timely appeal, raising the same grounds asserted in his habeas petition and reply.

Mateen argues that he was denied due process because his habeas petition was denied without a hearing. We disagree. Although the court erred procedurally in initially denying the petition before considering Mateen's response and the State's reply, it corrected that procedural error, with the agreement of the parties, by reconsidering the pleadings and issuing a new order denying the petition. Moreover, because we conclude that the pleadings and record show that Mateen was not entitled to any relief (*see infra* Parts III and IV), the court's premature denial of the petition did not harm Mateen. Thus, the court did not err in denying his habeas petition without a hearing.

### III.

### Sentence Increase Claim

#### A.

#### The Sentence Pronounced On March 19, 1982

Mateen contends that he is being wrongfully confined as a "lifer" and wrongfully considered for parole as a lifer,

because the sentence of 50 years that was announced at the March 19, 1982 re-sentencing was increased illegally through the improper actions of the DOC, the Parole Commission, the sentencing judge, and the court. Mateen argues that the sentence that Judge Levin actually pronounced on March 19, 1982 was 50 years, as reflected in the commitment record that his court clerk created on that date. Alternatively, he argues that there is such uncertainty as to the announced sentence that he is entitled to the benefit of that ambiguity under the rule of lenity.

Mateen points to the following documents to support his claim:

- **The commitment record made on the day of the March 19, 1982 re-sentencing hearing.** That record, signed by the court clerk who was present at the sentencing, states that Mateen was sentenced to "Fifty (50) years."

- **The April 6, 1982 "sentence and detainer status change report"** issued by the DOC, stating that Mateen's sentence had been "reduced on 3–19–82 to 50 yrs. from Life."

- **The October 28, 1992 letter from the then chairman of the Maryland Parole Commission to the sentencing judge,** pointing out that the 50 year term is less than the statutory minimum life sentence for first degree murder, and asking the judge to clarify whether he intended to impose a life sentence with all but 50 years suspended.

- **Judge Levin's response letter, dated November 3, 1982, to the Parole Commission:** "Please forgive my inartistic sentencing. It was my intention to sentence him to life and suspend all but fifty years."

- **The November 16, 1982 "sentence and detainer status change report" issued by the DOC,** stating that Mateen's sentence "now reads: Life—suspend 50 years" and citing Judge Levin's letter "explaining [the] change of sentence."

- **An April 4, 1984 revised commitment record,** stating that Mateen's "SENTENCE CHANGED TO READ: Balance of Natural Life and all but Fifty (50) years suspended."

- **An April 6, 1984 letter from Judge Levin to Mateen responding to an April 1, 1984 letter from Mateen to him** regarding the sentence change, in which Judge Levin explained that "[u]nder Maryland law when a person is found guilty of first degree murder the judge *must* sentence him to life imprisonment. However, the judge can suspend part of that sentence, which I did in your case. Your commitment order has been rewritten by the clerk's office in order to reflect what I stated above[.]"

Mateen contends that as a result of his wrongful confinement as a lifer, he has been declared either ineligible or unsuitable for parole, pre-release security classification, work release, and family leave.

The State's response to Mateen's argument is that the sentence announced on March 19, 1982 was "unambiguously" life with all but 50 years suspended. In support of that position, it relies exclusively on the "operative facts . . . from a single 'Commitment Record' issued on April 4, 1984[.]" Without acknowledging or addressing the significance of the March 19, 1982 commitment record, it asserts that Mateen's complaint that he is being unlawfully confined as a lifer should be rejected because it is "without a proper basis in the record."

We find the State's argument disingenuous. Given the March 19, 1982 commitment record, and Mateen's focus on it in his habeas petition (and during his years of effort to clarify his sentence), we may not simply ignore that commitment record in favor of the revised April 4, 1984 commitment record.[6] The 1982 commitment record constituted the official notice of the sentence imposed at the re-sentencing hearing.

---

6. In failing to address the existence or significance of the March 19, 1982 commitment record, or of the correspondence among the Parole Commission, Judge Levin, and Mateen regarding the sentence, the State fails to address the foundational issue raised in Mateen's habeas petition: whether Mateen has been wrongfully confined and considered for parole as a "lifer," due to an improper increase in his sentence. We expect counsel appearing before this Court to acknowledge and address the significance of documents material to such a central issue as the legality of confinement under an altered sentence.

*See* CS § 9–103(a)(2). The 1984 commitment record was not created until more than two years later; in fact, it was issued just three days after Mateen wrote to Judge Levin about the matter and two days before the judge's reply to Mateen. Moreover, the 1984 record explicitly acknowledges that Mateen's 50 year sentence was "CHANGED TO READ" life with all but 50 years suspended.

Based on the available documentary record created after Mateen's re-sentencing, we agree with Mateen that either the sentence actually announced at the March 19, 1982 hearing was 50 years, or there is such uncertainty as to the announced sentence that the doubt must be resolved in his favor. *See, e.g., State v. Sayre,* 314 Md. 559, 565, 552 A.2d 553 (1989)(under rule of lenity, ambiguous sentence must be construed as lesser of the possible penalties). The absence of a transcript from the March 19, 1982 re-sentencing hearing makes it impossible to review the actual pronouncement of the sentence. We therefore conclude that, together, the March 19, 1982 commitment record and the judge's November 3, 1982 letter raise an inference that the sentence, as it was actually but "inartistically" pronounced at the hearing, was 50 years rather than life with all but 50 years suspended. Thus, we shall proceed on the factual premise that at the March 19, 1982 re-sentencing hearing, the judge imposed a 50 year term of incarceration. We turn now to the questions raised by that sentence.

### B.

### The Sentence Correction

The threshold question is whether a 50 year sentence for first degree murder was a legal sentence. The answer is "no," because it is less than the minimum life sentence mandated by the General Assembly. *See, e.g.,* Md. Code (1957, 1996 Repl.Vol., 2001 Cum.Supp.), Art. 27 § 412(b)("a person found guilty of murder in the first degree shall be sentenced to death, imprisonment for life, or impris-

onment for life without the possibility of parole"[7]); *State v. Green,* 367 Md. 61, 80, 785 A.2d 1275 (2001)("once the predicate requirements for imposition of the ... sentencing provisions have been established, a sentencing court has no choice but to impose the mandatory minimum penalty prescribed"); *Shilling v. State,* 320 Md. 288, 295, 577 A.2d 83 (1990)("a trial judge cannot impose a legal sentence less than the minimum required under the statute"); *State v. Hannah,* 307 Md. 390, 402, 514 A.2d 16 (1986)(sentence of probation before judgment on handgun offense with statutory minimum sentence of 5 years was an illegal sentence).

The next question is whether the court had the power to correct the illegal 50 year sentence by imposing the longer sentence of life with all but 50 years suspended. The answer is "yes." Under Md. Rule 4–345(a), the court retained revisory power to correct this illegal sentence "at any time." Judge Levin was not required to wait for a motion to correct the illegal sentence; he was entitled to do so on his own initiative. *See State v. Griffiths,* 338 Md. 485, 496, 659 A.2d 876 (1995).

The record shows that as a result of Judge Levin's November 1982 letter and in connection with the judge's April 1984 letter, the DOC revised its sentence change report and the court revised its commitment record. The cumulative effect of these actions by Judge Levin, the court, the Parole Commission, and the DOC was that the illegal 50 year sentence was "corrected" and Mateen's term of confinement was increased to comply with the mandatory minimum life sentence required under Art. 27 section 412(b).

Correcting Mateen's illegal sentence was permissible under Md. Rule 4–345(a). In *Ridgeway v. State,* 369 Md. 165, 171–72, 797 A.2d 1287 (2002), the Court of Appeals recently explained that when an initial sentence is illegal, a court may correct it "at any time," and then impose a new legal sentence

---

**7.** Persons who were under the age of 18 or were mentally retarded at the time the murder was committed may not be sentenced to death. *See* Md.Code (1957, 1998 Repl.Vol., 2001 Cum.Supp.), Art. 27 § 412(g)(1).

without violating the Double Jeopardy Clause. *See id.* Ridgeway was charged with firing three shotgun blasts into an occupied trailer, hitting two adults and endangering, but not physically injuring, three children. The jury convicted Ridgeway of first degree assault against the adults, but acquitted him of the same charges against the children; instead, Ridgeway was convicted of recklessly endangering the children.

At sentencing, however, the court erroneously imposed three consecutive ten year sentences for first degree assault against the children, then merged the reckless endangerment counts into the first degree assault counts. The clerk's office immediately notified the sentencing judge of the sentencing error. The court recalled the case later the same day, vacated the three assault sentences with respect to the children, and, relying on Rule 4–345(a), sentenced Ridgeway to three consecutive five year sentences on the reckless endangerment counts that it previously had merged into the illegal assault sentences.

This Court rejected Ridgeway's argument that the court had improperly increased his sentence on the reckless endangerment counts from zero to five years. We held that the original sentences on the first degree assault counts were illegal sentences that the court could correct at any time under Md. Rule 4–345(a). *See Ridgeway v. State,* 140 Md.App. 49, 61–65, 779 A.2d 1031 (2001). We also held that the subsequently imposed five year sentences on the reckless endangerment convictions did not constitute double jeopardy. *See id.* at 63–65, 779 A.2d 1031.

The Court of Appeals agreed and affirmed, explaining that "[a] court cannot punish a defendant for a crime for which he or she has been acquitted." *See Ridgeway,* 369 Md. at 171, 797 A.2d 1287. The Court emphasized the critical distinction between correcting "a mistake or a 'slip of the tongue'" and correcting an illegal sentence. *See id.* at 172–73, 797 A.2d 1287. In correcting a sentence that the court mistakenly pronounced but did not intend to impose, but which otherwise was a legal sentence, the court acts within the narrow scope of

Rule 4–345(b), which prevents it from increasing the original sentence. In contrast, in correcting the erroneous pronouncement of a sentence that is illegal (whether or not the court intended to impose that sentence), the court that re-sentenced Ridgeway acted within the broad authority of Rule 4–345(a). *See id.* at 173, 797 A.2d 1287. Under that rule, the court could vacate the illegal sentence and impose a legal one without violating the Double Jeopardy Clause. *See id.* at 173–74, 797 A.2d 1287.

 *Ridgeway* teaches that if the original sentence was illegal, whether indirectly as in the case of Ridgeway's merged sentences, or directly as in the case of Mateen's 50 year sentence for first degree murder, it may be corrected by the imposition of a legal sentence, even though the corrected sentence is longer than the original illegal sentence. Being the "first legal sentence," the corrected sentence cannot, and does not, "add on" to the original illegal sentence. *See id.*

A contrary view, in which the illegal original sentence becomes a benchmark minimum for the corrected legal sentence, would effectively prevent the courts from correcting any sentence that is illegal because it is less than the mandatory statutory minimum. That would be inconsistent with the language and purpose of Md. Rule 4–345(a)("The court may correct an illegal sentence at any time"), and of CJ section 12–302(c), which explicitly gives the State a right to appeal when "the trial judge failed to impose the sentence specifically mandated by the Code." *See Green,* 367 Md. at 80, 785 A.2d 1275 (State has statutory right to appeal sentence that is less than the mandatory minimum sentence prescribed by statute).

As we have noted, the record before us shows that Judge Levin, the DOC, and the Parole Commission sought to correct the illegally shorter sentence of 50 years, by replacing it with a corrected legal sentence of life with all but the 50 years suspended. The next question we must ask is whether the extra-judicial manner in which this de facto correction occurred was lawful.

The answer is "no." Subsection (d) of Md. Rule 4–345 limits the court's exercise of its broad powers under subsection (a), by providing that "[t]he court may ... correct, or vacate a sentence only on the record in open court, after hearing from the defendant[.]" It is undisputed that Mateen's sentence was corrected without notice to Mateen and without a hearing. This off-the-record correction of an illegal sentence was error. Upon receiving the Parole Commission's request for clarification, Judge Levin should have notified Mateen and scheduled a hearing at which the sentence correction and the reasons for it were explained on the record.[8] As we see it, then, the problem here is not the correction of the illegal sentence, but the manner in which the State attempted to make the correction.

This conclusion brings us to our last question concerning Mateen's sentence: was Mateen prejudiced by the lack of notice or a hearing under Rule 4–345(d)? We answer "no" in the unique circumstances presented by this case.

As we have noted, Mateen could not legally be sentenced to 50 years for first degree murder. The minimum legal sentence for that crime was life, with the possibility of parole and with a number of years suspended. That is precisely the sentence that Mateen received as a result of the March 19, 1982 re-sentencing hearing and the de facto correction of his sentence. Thus, Mateen cannot complain that notice or a hearing on the sentencing correction could have yielded something less than a life sentence with some term of it suspended. Instead, the only "better" sentence that Mateen could have obtained would have been one in which the unsuspended portion of his sentence was less than 50 years.

We see nothing in the record, however, upon which we could conclude that Judge Levin would have suspended a greater portion of Mateen's life term. On March 19, 1982, Judge Levin determined that Mateen should serve 50 years, less

---

8. Indeed, if he had done so, the March 19, 1982 sentencing transcript is more likely to have been preserved.

applicable credits. He did so after Mateen had a full and fair opportunity on the record to present his "best case" for a shorter period of incarceration. Significantly, Mateen has never contended that something happened during the eight months between the March re-sentencing hearing and the judge's November statement that the appropriate sentence for Mateen was life with all but 50 years suspended, to persuade the judge to shorten the 50 year term of incarceration. Nor do we discern any such reason from the record.

Accordingly, we conclude that the court's error in failing to provide Mateen notice and a sentence correction hearing was harmless, because there is no reason to believe that notice or a hearing would have yielded a "better" sentence for Mateen. We hold that Mateen is not entitled to relief from his corrected sentence of life with all but 50 years suspended.

In doing so, we necessarily reject Mateen's complaints that his opportunities for parole, pre-release, family leave, and work release have been unlawfully curtailed because he has been improperly classified as a "lifer" since 1982. We turn now to Mateen's alternative complaint that, as a lifer, he has been denied meaningful consideration for parole, pre-release, work release, and family leave.

## IV.

### "Meaningful Consideration" Claims

#### A.

#### Background

Preliminarily, we review the background underlying Mateen's "meaningful consideration" claims. Mateen became eligible for parole in 1986. *See* CS § 7–301(d)(inmate serving life term becomes eligible for parole after serving 15 years or equivalent, after considering diminution credits). Since then, the Maryland Parole Commission "review[ed] [his case] and ma[de] recommendations to the Governor ... concerning parole of an inmate under a sentence of life imprisonment." CS

§ 7–206(3). Beginning in 1986, Mateen received annual parole hearings.

During his incarceration, Mateen also earned, through good institutional behavior, a pre-release security classification, and with it, the opportunity to participate in work release and family leave programs. He eventually obtained a supervisory job while on work release, and enjoyed regular family leave. At the time, pre-release status was necessary for work release and family leave privileges, and, in turn, successful work release and family leave experiences were a pre-requisite for obtaining parole.

In 1993, however, the State "tightened" its eligibility standards for pre-release, work release, and family leave.[9] On April 28, 1993, the Commissioner of Correction (the "Commissioner") cancelled family leaves for lifers. On June 9, 1993, the Commissioner also declared that lifers with a portion of their sentence suspended (including Mateen) were no longer eligible for work release, and could no longer be classified below medium security. *See Knox v. Lanham,* 895 F.Supp. 750, 753 (D.Md.1995).

At Mateen's September 1993 parole hearing, however, the Parole Commission recommended reinstatement of Mateen's family leaves, which the Commission still considered to be a prerequisite for parole. In December 1993, the Commissioner revised DOC security classification policy to provide that lifers serving a partially suspended sentence (including Mateen) could be classified below medium security with the approval of the Commissioner. *See id.* (citing DOC 100–005 (Sept. 25, 1995)).

After Mateen's September 1994 parole hearing, the Parole Commission considered Mateen's parole request en banc. Notwithstanding the new concerns about paroling lifers, it recommended to the Governor that Mateen be paroled.

---

**9.** The changes followed a series of crimes committed by lifers while on parole, work release, and family leave. *See Knox v. Lanham,* 895 F.Supp. 750, 753 (D.Md.1995).

While Mateen's parole recommendation was pending before the Governor, the United States District Court for the District of Maryland ruled that the Parole Commission could not require, as a condition precedent to granting parole, that a lifer had to be on work release or had to be classified below medium security. *See Knox,* 895 F.Supp. at 758. On July 31, 1995, the federal court held that the Parole Commission's unwritten but inflexible policy to that effect essentially converted a life sentence *with* the possibility of parole into a life sentence *without* the possibility of parole. *See id.* Thus, the Parole Commission's policy constituted an unconstitutional ex post facto law.[10]

In his opinion, Judge Motz emphasized the importance of preserving the prospect of parole for inmates serving a life sentence. The rationale for his decision was that each inmate serving a life sentence is entitled to "meaningful parole consideration," even if most lifers are not paroled.

*It may well be ... that "lifers" are only rarely granted parole. However, prior to the adoption of the measures here in question, that rare opportunity did exist for lifers who displayed an exceptional attitude and who compiled an excellent record while incarcerated. That opportunity has now been taken from them.* The record establishes beyond dispute that (1) under current Parole Commission

---

**10.** The Constitution of the United States provides that "[n]o State shall ... pass any ... ex post facto Law." *See* U.S. Const. art. 1, § 10, cl. 1. The ex post facto prohibition applies "to penal statutes which disadvantage the offender affected by them." *Collins v. Youngblood,* 497 U.S. 37, 41, 110 S.Ct. 2715, 2718, 111 L.Ed.2d 30 (1990). Article 17 of the Maryland Declaration of Rights similarly states:

[R]etrospective Laws, punishing acts committed before the existence of such Laws, and by them only declared criminal, are oppressive, unjust and incompatible with liberty; wherefore, no *ex post facto* Law ought to be made. . . .

Ex post facto laws include " '[e]very law that *aggravates* a *crime,* or makes it *greater* than it was, when committed,' " and " '[e]very law that *changes the punishment,* and inflicts a *greater punishment,* than the law annexed to the crime, when committed.' " *Collins,* 497 U.S. at 41–42, 110 S.Ct. at 2719 (quoting *Calder v. Bull,* 3 U.S.(3 Dall.) 386, 390, 1 L.Ed. 648, 650 (1798))(emphasis in original); *see Gluckstern,* 319 Md. at 664–672, 574 A.2d 898.

policy prisoners will not be recommended for parole unless they are on work release, (2) prisoners cannot participate in work release unless they are classified to pre-release security and (3) under DCD 100-1 lifers cannot be granted pre-release security. The effect of these changes is to foreclose lifers from ever being able to obtain parole. Hope and the longing for reward for one's efforts lie at the heart of the human condition. Their destruction is punishment in the most profound sense of the word.

*Id.* (emphasis added).

To ensure that lifers obtain meaningful parole consideration, Judge Motz ordered the Parole Commissioners to abandon their policy of requiring work release and family leave as a precondition for parole.

As long as the Maryland Division of Correction mandates that plaintiffs cannot be classified below medium security and as long as no inmate classified in medium security or higher is permitted to participate in work release and family leave programs, no Maryland Parole Commissioner may require as a condition for recommending the parole of any inmate who falls within the plaintiff class that he or she be actively participating in a work release or family leave program[.]

*Id.* at 762.

On September 21, 1995, two months after the *Knox* decision, while the Parole Commission's parole recommendation for Mateen was still pending before him, Governor Glendening announced at a news conference that he did not intend to grant parole to any inmate serving a life sentence for murder or rape, unless the inmate was very old or terminally ill. *See Lomax v. Warden, Maryland Correctional Training Ctr.,* 120 Md.App. 314, 317, 707 A.2d 395 (1998), *aff'd,* 356 Md. 569, 741 A.2d 476 (1999). He also "stated that he had 'directed the Parole [Commission] not to even recommend—to not even send to [his] desk—a request for parole for [such] murderers and rapists.' " *Id.*

Consistent with that announcement, the Governor denied Mateen parole. Handwritten notations, dated "11–27–95," appear on the Parole Commission's documents regarding the 1994 parole recommendation for Mateen, stating that Mateen was "denied parole by Gov." In the "decision" blank on that form, the Parole Commission inserted "[Rehear] 11/98."

The Governor's "life means life" policy statement prompted a number of unsuccessful challenges by inmates serving life sentences. *See Griggs v. Maryland,* 263 F.3d 355, 359 (4th Cir.2001), *cert. denied,* 534 U.S. 1141, 122 S.Ct. 1093, 151 L.Ed.2d 991 (2002); *Herrera v. State,* 357 Md. 186, 189, 742 A.2d 517 (1999); *State v. Kanaras,* 357 Md. 170, 185, 742 A.2d 508 (1999); *Lomax v. Warden, Maryland Correctional Training Ctr.,* 356 Md. 569, 580–81, 741 A.2d 476 (1999); *Campbell v. Cushwa,* 133 Md.App. 519, 540–45, 758 A.2d 616 (2000). In *Lomax,* the Court of Appeals held that the Governor's statement did not violate the ex post facto clause because it was merely an interpretive policy that reflected how the Governor intended to exercise the considerable discretion that he has to deny parole to lifers.

> Under the plain language of the state and federal constitutions, ... the ex post facto prohibition applies only to a "law." ... [T]he ex post facto prohibition does not apply to a "change in guidelines assisting [a government agency] in the exercise of its discretion." This Court, as well as numerous other courts, [has] taken the position that the ex post facto clauses are inapplicable to "parole guidelines [which] 'do not have the force and effect of law' but are merely 'polic[ies] ... that show how ... discretion is likely to be exercised[.]' "

*Id.* at 576, 741 A.2d 476 (citations omitted).

The *Lomax* Court nevertheless cautioned that the Parole Commission may not rely on the Governor's "life means life" policy as conclusive grounds to deny a parole recommendation. Affirming that the Commission remains obligated to perform its duties on a case-by-case basis, the Court held that the

policy may not play any role in the Parole Commission's consideration of parole for lifers.

"[T]he [Governor's] pronouncement has no binding effect on the duties of the Commission. The pronouncement does not, indeed cannot, affect the Commission's responsibilities pursuant to Md.Code, article 41, sections 4–501 et seq. and COMAR 12.08.01.17 § A. These provisions set forth the Commission's powers and duties, including administrative review of the files of prisoners sentenced to life imprisonment, and specific suitability factors the Commission must consider at a parole hearing. While what action the Governor intends to take with respect to any Commission recommendation of parole for a lifer not coming within the terms of the Governor's pronouncement may engender a less than full sense of job satisfaction on the part of a Commission member, the Commission must continue to do what the law directs it to do. Thus, to the extent that the portion of the Governor's pronouncement directing the "Parole [Commission] not to even recommend—not to even send to [his] desk—a request for parole for murderers or rapists," suggests that the Commission ignore its legally prescribed duties regarding parole recommendations for lifers, the Commission must ignore that portion of the pronouncement."

*Id.* at 580, 741 A.2d 476 (quoting Court of Special Appeals' opinion, 120 Md.App. at 335–36, 707 A.2d 395) (citations omitted).

In *Kanaras,* the Court of Appeals reiterated that the Parole Commission "must continue to apply the statutory factors and make recommendations to the Governor of those inmates sentenced to life imprisonment who are eligible for parole and who, in the Commission's judgment, should be paroled." *Kanaras,* 357 Md. at 185, 742 A.2d 508. It characterized "acts of the Parole Commission and the Commissioner of Correction, which had the effect of denying inmates [serving life sentences] the parole consideration to which they were entitled under the statutory scheme," as illegal conduct that is "subject to correction through a proper proceeding, such as a declara-

tory judgment action, a mandamus action, or a habeas corpus proceeding." *Id.* If "the illegal acts of those administrative officials have [not] been corrected through appropriate proceedings .... [the inmate] may certainly file such appropriate action." *Id.; see also Herrera,* 357 Md. at 188, 742 A.2d 517 ("the Parole Commission must apply the pertinent statutory factors and recommend to the Governor for parole those inmates sentenced to life imprisonment who are eligible for parole and who, in the Commission's judgment, should be paroled").

With these events and lessons in mind, we turn to Mateen's claims that he has been denied meaningful consideration for parole, pre-release status, work release, and family leave.

## B.

### Parole

 The Parole Commission has a statutory duty to "review and make recommendations to the Governor ... concerning parole of an inmate under a sentence of life imprisonment...." CS § 7–206. "A Commission panel that consists of two commissioners shall determine, by unanimous vote, whether the inmate is suitable for parole in accordance with the factors and other information specified in [CS] § 7–305[.]" CS § 7–307(b)(1)(i). In that event, "the case shall be presented by the panel to the Commission en banc." COMAR 12.08.01.17.A(7)(f). "If the Commission meeting en banc agrees ..., the Commission's recommendation for parole shall be forwarded to the Governor." COMAR 12.08.01.17.A(7)(g). Inmates serving a life term "may only be paroled with the approval of the Governor." CS § 7–301(d)(4); *see* COMAR 12.08.01.17.A(7)(e).

 The Parole Commission has less discretion in determining whether to recommend parole for a particular lifer than the Governor has in determining whether to follow that recommendation. *See, e.g.,* Op. Att'y Gen. No. 01–002, January 25, 2001, *reprinted in,* 28–3 Md. R. 164 (Feb. 9, 2001), 2001 Md. AG LEXIS 2, \*11 ("The Governor has ... broader discretion in determining whether to accept that recommenda-

tion"). The Commission's discretion is circumscribed by the requirement that its parole decision must be based on factors and information identified in CS section 7–305 [11] and in its own regulations.[12] *See Herrera,* 357 Md. at 188–89, 742 A.2d 517; *see also Patuxent Inst. Bd. of Review v. Hancock,* 329 Md. 556, 583, 620 A.2d 917 (1993)("a statute, administrative rules or regulations, or accepted practices may provide" a "constitutionally protected liberty interest in parole release").

---

**11.** The statutory factors include

(1) the circumstances surrounding the crime;

(2) the physical, mental, and moral qualifications of the inmate;

(3) the progress of the inmate during confinement . . .;

(4) whether there is reasonable probability that the inmate, if released on parole, will remain at liberty without violating the law;

(5) whether release of the inmate on parole is compatible with the welfare of society; [and] . . .

(7) any recommendation made by the sentencing judge at the time of sentencing[.]

CS § 7–305.

**12.** The Commission's regulations repeat the statutory factors, and add that

[t]he Commission also considers the following criteria:

(a) Whether there is substantial risk the individual will not conform to the conditions of parole;

(b) Whether release at the time would depreciate the seriousness of the individual's crime or promote disrespect for the law;

(c) Whether the individual's release would have an adverse affect on institutional discipline;

(d) Whether the individual's continued incarceration will substantially enhance his ability to lead a law abiding life when released at a later date.

(3) To make these determinations the Commission examines: . . .

(b) The offender's behavior and adjustment in his participation in institutional and self-help programs; . . .

(d) The offender's current attitude toward society, discipline, and other authority, etc.; . . .

(f) Whether the offender has demonstrated emotional maturity and insight into his problems;

(g) Any reports or recommendations made by the sentencing judge, the institutional staff, or by a professional consultant such as a physician, psychologist, or psychiatrist; . . .

(j) The offender's ability and readiness to assume obligations and undertake responsibilities; . . .

(*l*) Any other factors or information which the Commission may find relevant to the individual offender's consideration for parole.

COMAR 12.08.01.18.A.3 (2001).

In this case, Mateen argues that his "life with parole" sentence has been converted to a "life without parole" sentence by the Parole Commission's de facto implementation of the "life means life" policy, via a "rubber stamp" decision to rehear his case in three years and not to recommend parole.[13] We agree with Mateen that such rubber stamping would not afford him the meaningful parole consideration to which he is entitled, because it would not fulfill the Commission's statutory obligation to consider the applicable statutory and regulatory factors. A parole decision resulting from an unwritten and inflexible policy of implementing the "life means life" policy via a rubber stamped denial of a parole recommendation is an impermissible means of determining whether an inmate should be recommended for parole.

We also specifically reject the notion that such rubber stamping is harmless. Despite the Governor's announced intent to reject parole recommendations for murderers sentenced to life with the possibility of parole, we cannot say that the outcome of any particular parole recommendation is certain. "The Governor's announcement did not bind him, and he can employ different guidelines whenever he desires to do so." *Lomax,* 356 Md. at 577, 741 A.2d 476. Moreover, the next governor may exercise parole discretion in a different way than his or her predecessor, and in doing so, could view a record of prior parole recommendations and denials favorably.

Here, Mateen contends that even though the Parole Commission recommended him for parole in September 1994, he has not received any meaningful parole consideration since the Governor's September 1995 press conference. Citing the following facts reflected in Parole Commission documents, he claims that the Commission routinely has declined to consider or recommend him for parole without affording him the individualized determination to which he is entitled.

---

13. Like Lomax, Mateen was recommended for parole before the Governor made his "life means life" statements, and was denied parole shortly after the press conference.

• From 1986, when he first became eligible for parole, until 1995, when the Governor instructed the Parole Commission not to send him parole recommendations for murderers serving life sentences, Mateen was considered for parole annually for nine consecutive years, from 1986 through 1994.

• After Mateen's September 23, 1994 parole hearing, the Parole Commission recommended to the Governor that Mateen be paroled. Fourteen months later, in November 1995, two months after the Governor's press conference, the Governor denied that parole recommendation.

• Since that time, the Parole Commission has increased the interval between Mateen's parole considerations from one year to three years. It is undisputed that the Parole Commission did so in both 1995 and 1998.[14]

• Since September 1995, the Parole Commission has not recommended Mateen for parole, even though allegedly he has maintained the same strong institutional record that he had when he was recommended for parole in 1994. In September 2002, Mateen will have served 30 years.

Although the circuit court held that Mateen failed to state a cognizable claim against the Parole Commission, it did so without specifically addressing Mateen's meaningful parole consideration claim. We therefore must examine the record to determine whether there was any reasonable basis for Mateen's complaint.

Mateen does not appear to base his "meaningful parole consideration" claim on the Governor's denial of his 1994 parole recommendation.[15] Instead, he challenges the manner in which the Parole Commission has performed its statutory

---

14. In 1998, the Parole Commission decided to rehear Mateen's parole request in November 2001. The results of any parole hearing that Mateen may have had in 2001 are not reflected in the record before us.

15. Such a claim would be unsuccessful, for the reasons set forth in *Lomax v. Warden, Maryland Correctional Training Ctr.*, 356 Md. 569, 576–77, 741 A.2d 476 (1999).

duty of determining whether he deserves to be recommended for parole since the Governor announced that he would not grant parole to lifers serving murder sentences.

Based on our independent review of Mateen's habeas petition and the documents in the record before us, we conclude that Mateen did not state a cognizable claim that the Parole Commission denied him meaningful parole consideration. Mateen is not entitled to a parole recommendation simply because he previously received one. At each parole hearing, the Parole Commission must consider a number of factors in deciding whether to recommend parole. Among those factors are "[t]he offender's current attitude toward society, discipline, and other authority," and "[w]hether the offender has demonstrated emotional maturity and insight into his problems." COMAR 12.08.01.18.A.3. The Commissioners' remarks after the 1998 parole hearing state that Mateen "failed to show any remorse for the event and was evasive about narrative." Thus, the decision not to recommend Mateen for parole reflected an assessment that his "current attitude" did not merit such a recommendation, which, under the applicable standards, is a legitimate reason for the Parole Commission's decision. When the Parole Commission applies the statutory and regulatory factors, the inmate has received meaningful parole consideration, even if he does not agree with the decision or the reasons for it. *See Lomax,* 356 Md. at 580, 741 A.2d 476.

Mateen also complains that he is being denied meaningful parole consideration because the period between his parole hearings has increased from one year to three years. We again disagree.

We acknowledge that the increase in the interval between Mateen's parole hearings occurred just after the Governor held his "life means life" press conference, and that one reasonable inference from the timing of that increase is that the Parole Commission did so in an effort to honor the Governor's request not to recommend parole for inmates serving a life sentence for murder. Even so, such an exercise

of discretion was not improper. The Court of Appeals recognized in *Lomax* that parole discretion may be exercised in accordance with an announced "life means life" policy, because such " '[p]arole guidelines . . . do not have the force and effect of law,' but are merely 'polic[ies] that show how . . . discretion is likely to be exercised[.]' " *Lomax,* 356 Md. at 576, 741 A.2d 476 (citation omitted). Although there are requirements that inmates be considered for parole at specified intervals, the Parole Commission has discretion to schedule a parole hearing earlier than the mandatory hearing date. Mateen concedes that under the applicable regulations, he is not entitled to an earlier parole hearing. Because the Parole Commission afforded Mateen his mandatory parole hearings, we will not disturb the Parole Commission's decision to rehear his case in three years.

## C.

### Pre–Release, Family Leave, And Work Release

### 1.

### Pre–Release

Mateen claims that the DOC's decision to give him a medium security classification, thereby making it impossible for him to obtain pre-release status until one year before his mandatory supervised release date, is just another impermissible "rubber stamp" method of implementing the "life means life" policy. Again, his claim is not cognizable. Prison security classifications "do not alter, increase, or enhance the sentence. Rather, such classifications constitute matters of internal prison administration." *Campbell,* 133 Md.App. at 541, 758 A.2d 616. DOC regulations authorize the Commissioner to modify an inmate's security classification "for any reason," such that inmates do not have "a reasonable expectation of remaining in any given security classification status." *Id.* at 545, 758 A.2d 616 (citing DCD 100–005.II.T). For this reason, "[t]he classification of prisoners is ordinarily a matter vested in the discretion of prison administration, in accordance with

statute and COMAR regulations." *Id.* at 536, 758 A.2d 616. Accordingly, "[i]nmates in Maryland do not have a vested right to obtain a reduction in security status because, under DCD 100–005, DOC officials have discretion in approving classification recommendations." *Id.* at 547, 758 A.2d 616.

## 2.

### Work Release And Family Leave

▮▮ Finally, Mateen complains that he is being denied meaningful consideration for work release and family leave. Once again, we find no merit in his complaint.

▮▮ The DOC has discretionary authority to create and regulate work release and family leave programs. *See* CS § 3–801, § 3–811; *Knox,* 895 F.Supp. at 758. In the exercise of that discretion, it may provide that lifers are not eligible to participate in these programs. *See Knox,* 895 F.Supp. at 758–60. Because Mateen is entitled to participate in work release and family leave only if he can show that he meets the eligibility standards adopted by the DOC, and under those standards, he is presumptively, but not irrebuttably, ineligible due to his life sentence, he has not been denied meaningful consideration for these programs.

### Conclusion

We have reviewed the habeas court's denial of Mateen's petition, albeit without the benefit of that court's reasons, and without the benefit of relevant briefing by the State. In that effort, we have addressed all of the substantive issues raised by Mateen in his habeas petition and pleadings. We conclude that although Mateen has had legitimate cause to complain about the manner in which his sentence was changed, for the reasons set forth in Parts III and IV, he does not have a cognizable habeas claim against any of the appellees. We therefore find no error in the habeas court's conclusion that Mateen "is not entitled to any [habeas] relief," and affirm the judgment denying his habeas petition on that ground.

664

JUDGMENT AFFIRMED. COSTS TO BE PAID ½ BY APPELLANT, ½ BY APPELLEES.