829 A.2d 1007

Muhsin R. MATEEN

v.

Mary Ann SAAR, et al.

No. 121, Sept. Term, 2002.

Court of Appeals of Maryland.

Aug. 4, 2003.

386

Nancy S. Forster, Deputy Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Andrew H. Baida, Solicitor General (J. Joseph Curran, Atty. Gen., Scott S. Oakley, Asst. Atty. Gen., on brief), Baltimore, for respondents.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

BATTAGLIA, J

This case comes to us from a judgment of the Court of Special Appeals affirming the Circuit Court for Baltimore City's denial of Muhsin R. Mateen's Petition for Writ of Habeas Corpus. We must consider whether the Circuit Court's pronouncement of Mateen's 1973 sentence for first degree murder was for 50 years, or for life with all but 50 years suspended, whether subsequent off-the-record communications between the sentencing judge and the chairman of the Maryland Parole Commission, in the absence of notice to Mateen or an opportunity to be heard, could have constituted a valid correction of Mateen's 1973 sentence, and finally, whether the State[1] has the right on appeal to challenge the legality of a flat 50–year sentence, if that was what the trial judge pronounced, for first degree murder. For the reasons discussed herein, we shall conclude that Mateen's sentence was for 50 years, that, although illegal, his sentence was not corrected in accordance with the Maryland Rules, and that the State did not have the right to challenge the legality of the sentence on appeal. Consequently, we shall reverse the judgment of the Court of Special Appeals and remand the case with directions that the intermediate appellate court remand

---

1. Mateen sought relief in his Petition against the Governor of Maryland, the Secretary of the Department of Public Safety and Correctional Services, the Commissioner of Correction, the Chairperson of the Maryland Parole Commission, and the Warden of the Western Correctional Institution. We shall refer to these respondents collectively as "the State."

the case to the Circuit Court for further proceedings consistent with this opinion.

## I. BACKGROUND

On November 30, 1972, Mateen (a/k/a Jerome Allen Williams)[2] was convicted in the Criminal Court of Baltimore of first degree murder. At the time of the murder, Maryland law provided that "[e]very person convicted of murder in the first degree ... shall suffer death, or undergo a confinement in the penitentiary of the State for the period of their natural life, in the discretion of the court before whom such person may be tried." Maryland Code, Art. 27, § 413 (1957, 1971 Repl.Vol.). Because discretionary death sentences like that provided for in Section 413 had been struck down by this Court as unconstitutional by the time of Mateen's sentencing,[3] Judge Marshall A. Levin declared that, "the law [left him with] no alternative" other than to impose a life sentence. Consequently, on January 5, 1973, Judge Levin sentenced Mateen "to the jurisdiction of the Commissioner of Correction" commencing September 9, 1972, and continuing for the "balance of his natural life."

Thereafter, however, in *State v. Wooten*, 277 Md. 114, 116–18, 352 A.2d 829, 831 (1976), this Court determined that Article 27, Section 413 was subject to Maryland Code, Art. 27, § 641A (1957, 1971 Repl.Vol.), which empowered courts to "impose a sentence for a specified period and provide that a

---

**2.** Mateen changed his name in 1974.

**3.** In *Bartholomey v. State*, 267 Md. 175, 181–84, 297 A.2d 696, 699–701 (1972), decided before Mateen's sentencing, this Court determined that the imposition of the death penalty under any Maryland Statute that allowed for, but did not require the death penalty, was "violative of the Eighth and Fourteenth Amendments to the Federal Constitution." (citing the consolidated cases of *Furman v. Georgia, Jackson v. Georgia, and Branch v. Texas, sub nom. Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), *reh. den.* 409 U.S. 902, 93 S.Ct. 89, 34 L.Ed.2d 163 (1972)). *See also State v. Chaney*, 375 Md. 168, 825 A.2d 452 (2003)(No. 89, Sept. Term, 2002)(Filed June 10, 2003)(Slip op. at 9–10), for a recent discussion of the background regarding the status of Maryland's death penalty statute at this time.

lesser period be served in confinement [and to] suspend the remainder of the sentence." Subsequently, in *Williamson v. State*, 284 Md. 212, 215, 395 A.2d 496, 497 (1979), we concluded that a trial judge erred when he "did not exercise the discretion that he possessed under *Wooten* despite [an] appellant's request that he consider suspending part of the life sentence imposed upon her." In light of these decisions, Mateen filed a petition for post conviction relief with the Criminal Court of Baltimore, in which he asserted that his life sentence was illegal because Judge Levin, in 1973, "failed to consider a suspension of the sentence as a possible alternative to incarceration." The post conviction judge agreed and ordered that the case be "remanded to the trial court for resentencing." [4]

On March 19, 1982, a new sentencing hearing was held before Judge Levin. The parties represent that there is no transcript available of that hearing. A docket entry for the date of the hearing, however, states: "Change of sentence hearing. Judgment. Fifty (50) years c/o DOC dating from 9–9–72." In addition, a Criminal Court of Baltimore Commitment Record, dated March 19, 1982, states: "Prisoner is committed to the jurisdiction of the Commissioner of Correction commencing on 9–9–72 for a period of Fifty (50) years." A Division of Correction Sentence and Detainer Status Change Report also states that Mateen's sentence was "reduced on 3–19–82 to 50 years from life," and that "[h]is total sentence now reads: 50 [years] from 9–9–72."

Seven months after the resentencing hearing, in a letter dated October 28, 1982, the Chairman of the Maryland Parole Commission sought clarification of Mateen's sentence from Judge Levin. The Chairman wrote in a letter to Judge Levin that "the Annotated Code of Maryland mandates if a person is found guilty of First Degree Murder the sentence must be life imprisonment." The Chairman then asked Judge Levin whether it was his "intention to sentence [Mateen] to life imprisonment and suspend all but 50 years or was [Mateen]

---

4. The propriety of this decision is not at issue in the present proceeding.

found guilty of a lesser count and sentenced to 50 years incarceration?" "Clarification of the correct sentence structure," the Chairman reasoned, "is necessary in determining whether [Mateen] receives parole consideration after serving one-fourth of his sentence or whether he has to serve 15 years less good conduct time and industrial time if he was sentenced to life imprisonment, with a portion suspended."

Judge Levin responded by letter dated November 3, 1982, in which he wrote: "Please forgive my inartistic sentencing. It was my intention to sentence [Mateen] to life and suspend all but fifty years." After receiving Judge Levin's letter, the Division of Correction issued a second Sentence and Detainer Status Change Report on November 16, 1982, stating that Mateen's "total sentence now reads: Life suspend 50 yrs."

By letter dated April 1, 1984, Mateen sought clarification from Judge Levin of his sentence. Three days later, the Circuit Court for Baltimore City [5] issued another Commitment Record stating, "Sentence changed to read: Balance of Natural Life and all but Fifty (50) years suspended," and two days after that, Judge Levin wrote to Mateen that, "The sentence I gave you at your resentencing on March 19, 1982 was life with all but fifty years suspended." Judge Levin also wrote:

Under Maryland law when a person is found guilty of first degree murder the judge *must* sentence him to life imprisonment. However, the judge can suspend part of that sentence, which I did in your case. Your commitment order has been rewritten by the clerk's office in order to reflect what I stated above and to remove any confusion that exists about your sentence.

Mateen wrote another letter to Judge Levin in November of 1984 again seeking clarification of his sentence and an expla-

---

**5.** "By Ch. 523 of the Acts of 1980, the courts of the Supreme Bench of Baltimore City, which included the Criminal Court of Baltimore, the Superior Court of Baltimore City, the Court of Common Pleas, the Baltimore City Court and the Circuit Court of Baltimore City, were abolished and replaced by the Circuit Court for Baltimore City, effective January 1, 1983." *State v. Mayor & City Council of Baltimore*, 296 Md. 67, 68–69 n. 1, 459 A.2d 585, 585 n. 1 (1983).

nation as to his eligibility for parole. Judge Levin responded by letter dated December 13, 1984, in which he wrote:

> I imposed a life sentence. However, I suspended all but 50 years. That means that your actual sentence is 50 years. If you are released on parole and any part of your sentence is thus "suspended" (meaning that you have not served the entire 50 years) then the suspended amount can be reimposed if you violate parole.... Parole is predicated on 50 years.

In 1986, Mateen became eligible for, but was denied, parole. In 1987, he was transferred to a Pre–Release unit, eventually began to participate in family leave and work release programs, and was again considered for, but denied, parole. Parole was also denied in 1988 and in 1989. In 1990, Mateen wrote another letter to Judge Levin, again seeking clarification of his sentence and an explanation as to his eligibility for parole. Judge Levin responded to Mateen in a May 15, 1990 letter, reiterating that his "actual sentence was amended in 1982 from 'life,' to 'life, with all but 50 years suspended.'" The judge also explained that according to the Parole Commission, Mateen became eligible for parole in 1986, but that parole was denied that year, as well as in 1987, 1988, and 1989, and that Mateen was scheduled to appear before the Parole Commission again in June of 1990. The Judge then noted that the Parole Commission was treating Mateen's "eligibility for parole properly" and explained that "eligibility does not mean you are automatically *released* . . . you must satisfy the Parole Commission that you are a suitable candidate for parole."

In 1993, the Commissioner of Correction cancelled family leave and work release programs for inmates serving life sentences and ordered that all such inmates be classified to no less than medium security, except under certain conditions. As a result, Mateen was removed from family leave and work release programs and returned to a medium security facility. Division of Correction Directives 100–005, 100–508 and 100–543, which reflected these policies, were issued later.

On September 14, 1993, Mateen appeared before the Maryland Parole Commission, parole was denied, and Mateen's case was to be reheard in one year. One year later, Mateen again appeared before the Parole Commission, and the Commission recommended that Mateen be paroled. In 1995, Governor Glendening denied parole.

Two years later Mateen filed, *pro se*, a Petition for Writ of Habeas Corpus in the Circuit Court for Baltimore City seeking, "Declaratory Judgement for Suspended Life sentence, Release on Parole and/or to Participate in Pre–Release, Work Release, and Family Leave Programs." On October 31, 2000, without a hearing and prior to the deadline for Mateen's reply to the State's response to his Petition for Writ of Habeas Corpus, the Circuit Court issued an Order denying Mateen's Petition on the basis that "the individual confined or restrained is not entitled to any relief." Mateen was never served with a copy of that order. Mateen eventually retained counsel who, after learning of the Court's order denying Mateen's Petition, wrote a July 31, 2001, letter to the post conviction judge. In that letter, Mateen's counsel explained that "since neither [Mateen] nor his attorney were informed of the Court's final judgment in this case, [Mateen] has lost his right of appeal." Therefore, Mateen's counsel requested that the Court reissue and refile *nunc pro tunc* its October 31, 2000, Order so that Mateen could exercise his right of appeal. Two months later, the Circuit Court issued an Order for *nunc pro tunc* relief, and thereafter, Mateen filed a timely appeal.

The Court of Special Appeals affirmed the dismissal of Mateen's petition for habeas corpus relief in *Mateen v. Galley*, 146 Md.App. 623, 807 A.2d 708 (2002). The intermediate appellate court determined that on March 19, 1982, Mateen was resentenced to an illegal term of 50 years imprisonment. The Court also concluded, however, that the illegal sentence was corrected by extrajudicial communications between the sentencing judge and the Chairman of the Maryland Parole Commission, which prompted amendments to a Division of Correction Sentence and Detainer Status Change Report and a Circuit Court Commitment Record, so that those records

indicated that Mateen's sentence was life with all but 50 years suspended. We granted certiorari, 372 Md. 763, 816 A.2d 111 (2003), to consider the following questions presented in Mateen's petition, which he filed *pro se.*

I. Was Judge Levin's sentence ambiguous and under the rule of lenity should [it] be construed as fifty years from September 9, 1972?

II. Was petitioner deprived of due process rights and a hearing on his writ of habeas corpus based on court errors?

Mateen also raised a third question: "Can petitioner raise a claim in a habeas corpus proceeding?" After filing his petition for certiorari, however, Mateen retained counsel who withdrew this question. Mateen's counsel then raised the following question in Mateen's brief: "Do the Division of Correction's classification rules making parole more difficult to obtain violate the Ex Post Facto provisions of the federal and Maryland constitutions?" Counsel asserts that the question, although not specifically named as a question presented in Mateen's petition for certiorari, was nonetheless raised in other parts of the petition, and that, in any event, we should exercise our discretion to address the issue.

We need not reach the preservation, habeas corpus, or due process issues because, for the reasons discussed herein, we shall conclude that Mateen's properly entered sentence was for 50 years, commencing on September 9, 1972, not life with all but 50 years suspended, and that the State is unable to challenge the legality of this sentence in this proceeding or otherwise at this juncture. Consequently, we shall vacate the judgment of the Court of Special Appeals and remand the case to the intermediate appellate court with directions that it remand to the Circuit Court for further proceedings consistent with this opinion.

## II. DISCUSSION

Mateen contends that his sentence should be construed as a flat 50 years, rather than life with all but 50 years

suspended, because the pronouncement of his sentence by Judge Levin on March 19, 1982 was ambiguous, and under the rule of lenity he is entitled to the less severe sentence. Mateen also claims that, contrary to the decision of the Court of Special Appeals, it was not mere "harmless error" when the Circuit Court violated Maryland Rule 4–345(d) by failing to correct the sentence on the record, in open court, and after hearing from the parties. Mateen further contends that if his sentence is in fact life with all but 50 years suspended, then two Division of Correction Directives violate the ex post facto provisions of the federal and Maryland Constitutions. Those directives, DCD 100–005 and DCD 100–508, provide, respectively, that inmates serving life sentences with all but a specific term of years suspended cannot be classified below medium security except under certain conditions, and that such inmates are ineligible for work release. Mateen claims that because the Maryland Parole Commission "has a long standing policy requiring inmates to successfully complete work release and other forms of leave prior to recommending parole to the Governor," the combination of that policy along with the DOC Directives prevents him from obtaining release on parole. The result of this, according to Mateen, is an "impermissibl[e] increase [in] the quantum of punishment imposed on [him] at the time of his original sentencing in violation of ex post facto principles." Finally, Mateen argues that the trial court violated his due process rights "by denying his petition for writ of habeas corpus without a hearing."

The State urges us to reject Mateen's assertion that his sentence should be construed as 50 years because "[s]uch a sentence is illegal" and "is not what the circuit court imposed when it resentenced [Mateen] in 1982." The State also claims that Mateen's ex post facto argument has not been preserved for review because "neither his brief in the Court of Special Appeals, nor the Petition for a Writ of Certiorari he filed with this Court, contains such an argument." Even if we choose to review Mateen's ex post facto argument, the State asserts, we should reject it because Division of Correction Directives are not "laws" within the meaning of the ex post facto clauses of

the federal and Maryland Constitutions, because such directives do not "lengthen" Mateen's period of incarceration, and "the Parole Commission does not condition a parole recommendation on an inmate's work release or leave status." Finally, the State asserts that Mateen's due process challenge to the Circuit Court's dismissal of his habeas petition should be rejected because Mateen produced no evidence that the Circuit Court did not consider his "reply and other papers filed in support of his habeas petition," and also because Mateen "did not ask for a hearing" when he requested the Court to reissue its October 31, 2000, order dismissing his petition.

Our analysis begins with Mateen's resentencing, which occurred over twenty years ago, on March 19, 1982, and for which no transcript of the proceeding is available. We agree with the Court of Special Appeals that Mateen's sentence was a flat 50 years, rather than life with all but 50 years suspended. *See Mateen*, 146 Md.App. at 646, 807 A.2d at 721. As was pointed out by the intermediate appellate court, a Criminal Court of Baltimore Commitment Record, dated March 19, 1982, the day of the resentencing hearing, states: "Prisoner is committed to the jurisdiction of the Commissioner of Correction commencing on 9–9–72 for a period of Fifty (50) years." Also, a Division of Correction Sentence and Detainer Status Change Report states that Mateen's sentence was "reduced on 3–19–82 to 50 years from life," and that "[h]is total sentence now reads: 50 [years] from 9–9–72." In addition, subsequent to the proceedings in the Court of Special Appeals, the State discovered a docket entry for March 19, 1982 that states: "Change of sentence hearing. Judgment. Fifty (50) years c/o DOC dating from 9–9–72." Although admittedly terse, "[t]he value of a simple docket entry which ... makes clear to everyone the disposition of each and every claim in a case cannot be overemphasized." *Jones v. Hubbard*, 356 Md. 513, 523, 740 A.2d 1004, 1010 (1999). Docket entries are " 'made under the eye of the court, and by its authority,' " *Jackson v. State*, 68 Md.App. 679, 688, 515 A.2d 768, 773 (1986)(quoting *Weighorst v. State*, 7 Md. 442, 450

(1855)), and are presumed to be "true until corrected." *Coleman v. State,* 231 Md. 220, 222–223, 189 A.2d 616, 618 (1963) citing *Roberts v. State,* 219 Md. 485, 488, 150 A.2d 448 (1959). Furthermore, we also note that "[f]undamental fairness dictates that the defendant understand clearly what debt he must pay to society for his transgressions. If there is doubt as to the penalty, then the law directs that his punishment must be construed to favor a milder penalty over a harsher one." *Robinson v. Lee,* 317 Md. 371, 379–80, 564 A.2d 395, 399 (1989). Thus, we agree with the conclusion of the Court of Special Appeals that the sentence imposed upon Mateen during his resentencing on March 19, 1982 was for 50 years.

We also acknowledge, as did the Court of Special Appeals, that a straight 50–year sentence for first degree murder was "illegal." *Mateen,* 146 Md.App. at 646, 807 A.2d at 722. The statute in effect at the time of Mateen's conviction in the present case, prescribing the penalties for first degree murder, stated: "Every person convicted of murder in the first degree, his or her aiders, abettors and counsellors, shall suffer death, or undergo a confinement in the penitentiary of the State for the period of their natural life...." Maryland Code, Art. 27, § 413 (1957, 1971 Repl.Vol.). Similarly, the statute in effect at the time of Mateen's resentencing that prescribed punishment for first degree murder directed: "A person found guilty of murder in the first degree shall be sentenced to either death or to imprisonment for life...." Maryland Code, Art. 27, § 412(b) (1957, 1976 Repl.Vol., 1980 Supp.). Thus, a judge had only two options when rendering a sentence for first degree murder: death, or imprisonment for life. A sentence of 50 years is "illegal" in the sense that it does not comport with either of those two sentencing options.

▮ An illegal sentence, as was properly recognized by the Court of Special Appeals, may be corrected by a court at any time, even on its own initiative. *Mateen,* 146 Md.App. at 647–49, 807 A.2d at 722–23. *See also State v. Griffiths,* 338 Md. 485, 496, 659 A.2d 876, 882 (1995)(recognizing that Maryland Rule 4–345(a) allows a court to correct an illegal sentence at

any time and stating that the Rule "does not preclude action by the trial court on its own initiative.") We differ, however, with the intermediate appellate court's assessment that the "cumulative effect" of "Judge Levin's November 1982 and April 1984 letter[s]" along with the "DOC['s] revis[ion of] its sentence change report and the court['s] revis[ion] of its commitment record" constituted a "de facto correction" of Mateen's 50 year sentence to life with all but 50 years suspended. *Mateen,* 146 Md.App. at 649, 807 A.2d at 722–23.

When Mateen was resentenced on March 19, 1982, Maryland Rule 774 governed the revisory power of the court with respect to sentencing. That Rule provided the court with broad powers to correct an illegal sentence, stating in part that "[t]he court may correct an illegal sentence at any time." Md. Rule 774(a). The court's power to correct an illegal sentence, however, was not unlimited, for the Rule also stated:

> A modification or reduction or striking of sentence shall be made on the record in open court after notice to the defendant and the State's Attorney. A new sentence specifying the modification or reduction made shall be entered of record.

Md. Rule 774(c). In the instant case, no hearing was held on the record in open court, and no notice was given to Mateen or to the State. Rather, seven months after Mateen was resentenced to 50 years, the Chairman of the Maryland Parole Commission sent a letter to Judge Levin pointing out that the Maryland Code required a sentence of life imprisonment for first degree murder, and seeking clarification as to whether the judge meant to sentence Mateen to life in prison with all but 50 years suspended. Judge Levin responded in a letter to the Chairman that it was his "intention" to impose a sentence of life with all but 50 years suspended.[6] Based upon these off-the-record communications, the Division of Correction's Sentence Change Report and eventually, the Circuit Court's Com-

---

6. The copies of these letters in the record are of very poor quality. It does not appear, however, that Mateen was sent copies of them.

mitment Record, were revised to reflect a sentence of life with all but 50 years suspended. For the next two decades, Mateen was treated as a "lifer," the consequences of which included restrictions on work release and family leave programs, and parole. Mateen's sentence, however, was never corrected properly because there was never a hearing on the record or notice provided to the parties, as was required by Maryland Rule 744(c). *See Dotson v. State*, 321 Md. 515, 523, 583 A.2d 710, 714 (1991)(stating that the Maryland Rules "have the force of law"). Consequently, the Circuit Court's commitment order and the DOC's sentence change report indicating that Mateen's sentence is life with all but 50 years suspended, are of no legal force or effect.

The State, however, urges us not to conclude that the appropriate sentence was 50 years because such a sentence for first degree murder was "illegal." Even if the 50–year sentence was illegal, however, that does not necessarily mean that the State has the right to challenge it here. We explain.

In *State v. Green*, 367 Md. 61, 79, 785 A.2d 1275, 1283 (2001), we established "once and for all that there is now no common law right of appeal under Maryland law." Indeed, the right to appeal "in either a civil or criminal case, must find its source in an act of the legislature." *State v. Bailey*, 289 Md. 143, 147, 422 A.2d 1021, 1024 (1980). *See also Jones v. State*, 298 Md. 634, 637, 471 A.2d 1055, 1057 (1984) ("Under Maryland law the State's right to appeal in a criminal case is limited; it may do so only when authorized by statute."). Thus, we must determine if any statute provided the State with the right to challenge on appeal the legality of Mateen's 50 year sentence for first degree murder.

Maryland Code, § 12–302(c)(2) of the Courts and Judicial Proceedings Article (1973, 2002 Repl.Vol.), is the only statute that could empower the State to appeal here. It provides that the State may appeal from a final judgment "if the State alleges that the trial judge failed to impose the sentence specifically mandated by the Code." The question, then, is whether a sentence of life for first degree murder

under the relevant statutory provisions is "specifically mandated by the code." For the following reasons, we conclude that it is not.

■ When a sentencing judge has the discretion to suspend a sentence, or similarly, to grant probation before judgment, the sentence is not specifically mandated by the Maryland Code. In *Green, supra*, we concluded that the State had the right to appeal because the sentencing provisions of Maryland Code, Art. 27, § 643B(c) (1957, 1992 Repl.Vol.), were mandatory. *Id.* at 82, 785 A.2d at 1287. In so concluding, we reasoned that the statute specifically directed "that courts may not suspend 'all or part' of such sentences." *Id.* We also noted that the statute was entitled "Mandatory sentences for crimes of violence," and that it employed the term "shall."

In *State v. Hannah*, 307 Md. 390, 392, 514 A.2d 16, 17 (1986), Hannah pled guilty to common law robbery and to the use of a handgun in the commission of a felony in violation of Maryland Code, Art. 27, § 36B (1957, 1982 Repl.Vol., 1985 Cum.Supp.). For the robbery charge, the circuit court sentenced him to 10 years imprisonment, of which, he was to serve two. *Id.* The rest of his confinement was suspended, with Hannah being placed on probation upon his release from custody. *Id.* Thereafter, the circuit court struck its previous finding of guilt on the handgun charge and gave Hannah probation before judgment, pursuant to Art. 27, § 641, which provided in part that "when ever a person pleads guilty" to an offense, the court may stay the entering of judgment and "place the person on probation subject to reasonable terms and conditions as appropriate." *Id.* at 393–94, 514 A.2d at 17.

The State appealed, arguing that it had the right to do so pursuant to § 12–302 of the Courts and Judicial Proceedings Article. *Id.* at 394, 514 A.2d at 18. We granted certiorari before any proceedings in the Court of Special Appeals, and concluded that the State had a right to appeal. In so concluding, we stated that "the State's right to appeal rises or falls on CJ § 12–302(c)(2)," which conferred a "special right of appeal" for the State when "it contends that a trial judge had failed to

impose the sentence specifically mandated by the General Assembly." *Id.* at 397, 514 A.2d at 19. We then observed that the statute governing the penalties for the use of a handgun in the commission of a felony specifically prohibited a court from suspending a sentence or entering judgment of probation before a verdict. *See* Maryland Code, Art. 27, § 36B(e)(2) and (3) (1957, 1982 Repl.Vol.)(declaring that "no court shall suspend a mandatory minimum sentence prescribed in this subheading" and that "no court shall enter a judgment of probation before or without verdict with respect to any case arising under this subheading"). Thus, because the judge's probation disposition violated a "mandatory sentencing law," we concluded that Section 12–302(c)(2) of the Courts and Judicial Proceedings Article provided the State with the ability to appeal. *Id.* at 402, 514 A.2d at 21–22.

Four years later, in *Shilling v. State*, 320 Md. 288, 577 A.2d 83 (1990), we concluded that Maryland Code, Art. 27, § 641(a)(2) (1987 Repl.Vol.), was a mandatory sentencing statute and, as a result, the State had a right to appeal. Shilling was found guilty of operating a motor vehicle while intoxicated in violation of Maryland Code, § 21–902(a) of the Transportation Article (1987 Repl.Vol., 1989 Cum.Supp.). The circuit court judge, despite the fact that Shilling had been previously found guilty of driving while under the influence of alcohol and given probation before judgment for that crime, stayed the entry of judgment, granted Shilling probation before judgment, and fined him $250.00. *Id.* at 290, 577 A.2d at 84. Section 641(a)(2) provided in part:

> Notwithstanding paragraph (1) of this subsection, a court may not stay the entering of judgment and place a person on probation for a second or subsequent violation of § 21–902(a) or (b) of the Transportation Article if the second or subsequent violation occurred within 5 years of the previous violation. A person is in violation of § 21–902(a) or (b) if that person receives probation under this section.

*Id.* at 291, 577 A.2d at 84. We determined that this language "specifically" eliminated "the possibility of probation" under the circumstances of the case, and that the trial judge, there-

fore, imposed a disposition contrary to that specifically mandated by statute. *Id.* at 294, 577 A.2d at 86. Indeed, we stated that "a sentence is specifically mandated when the legislature prohibits probation before judgment or suspension of the imposition of sentence." *Id.* at 294, 577 A.2d at 86. Although under previous case law and versions of Section 12–302, the State had a right to appeal from an "illegal" sentence, we observed that the version of Section 12–302(c)(2), which is substantially the same as the law at issue in the present case, "seeks to specify that the State may appeal when the trial court does not impose a sentence the legislature has clearly mandated." *Id.* Because the Legislature had prohibited probation under the circumstances of this case in Section 641(a)(2), we concluded that it "mandated" that "some sentence, however minimal, be imposed," and that the State, therefore, had a right to appeal. *Id.* at 293, 577 A.2d at 85.

In enacting the law prescribing the penalties for first degree murder, which were in effect at the time of Mateen's conviction and when he was resentenced, it is clear that the Legislature did not specifically prohibit sentencing judges from exercising their discretion to suspend a life sentence. The statute in effect at the time of Mateen's conviction in the present case prescribing the penalties for first degree murder stated: "Every person convicted of murder in the first degree, his or her aiders, abettors and counsellors, shall suffer death, or undergo a confinement in the penitentiary of the State for the period of their natural life...." Maryland Code, Art. 27, § 413 (1957, 1971 Repl.Vol.). Similarly, the statute in effect at the time of Mateen's resentencing that prescribed punishment for first degree murder directed: "A person found guilty of murder in the first degree shall be sentenced either to death or to imprisonment for life." Maryland Code, Art. 27, § 412(b) (1957, 1976 Repl.Vol., 1980 Supp.). Neither of those statutes specifically prohibit a sentencing judge from suspending a life sentence. Furthermore, this Court has determined that sentencing judges do, in fact, have the discretion to suspend all or part of life sentences for first degree murder, *State v. Wooten,* 277 Md. at 116–18, 352 A.2d at 831–32, and

that the failure to exercise such discretion is error. *William-son v. State,* 284 Md. at 215, 395 A.2d at 497 (concluding that a trial judge erred when he "did not exercise the discretion that he possessed under *Wooten* despite [an] appellant's request that he consider suspending part of the life sentence imposed upon her"); *but see State v. Chaney,* 375 Md. 168, 825 A.2d 452 (2003). Because a sentencing judge has the discretion to suspend a life sentence for first degree murder, that sentence has not been "specifically mandated" by the Legislature. Consequently, the State has no right to appeal the legality of Mateen's sentence.

Nor may the State circumvent the limitations of Section 12–302(c)(2) by insisting, in an argument suggestive of a motion to correct an illegal sentence under Maryland Rule 4–345(a), that we not construe Mateen's sentence as 50 years because that sentence was "illegal." Our decision in *Telak v. State,* 315 Md. 568, 556 A.2d 225 (1989), is instructive on this point. In that case, Telak was found guilty in the District Court of Maryland, Baltimore County, of driving while intoxicated and negligent driving. *Id.* at 569, 556 A.2d at 225. On July 24, 1986, the District Court entered an order striking the guilty verdicts and imposing probation before judgment, 2 years supervised probation, a fine, and a requirement of alcohol-related treatment. *Id.* Neither party filed a notice of appeal within 30 days of this order. *Id.* On August 15, 1986, however, the State filed a "Motion to Correct an Illegal Sentence," which was denied by the District Court on September 18, 1986. *Id.* Twelve days later, but 68 days after the District Court's July 24 order, the State filed a notice of appeal to the Circuit Court for Baltimore County. *Id.* Telak filed a motion to dismiss the State's appeal on the ground that it was not filed within the 30 day time frame mandated by Maryland Code, § 12–401(c)(1) of the Courts and Judicial Proceedings Article (1974, 1984 Repl.Vol.).[7] *Id.* at 570, 556 A.2d at 225–26. The Circuit Court

---

7. Section 12–401(a) provided the State with the ability to appeal from a final judgment of the District Court if it alleged "that the trial judge failed to impose the sentence specifically mandated by the Code." With

denied Telak's motion, entered a mandate granting the State's motion to correct an illegal sentence, and remanded the case to the District Court. *Id.* at 570, 556 A.2d at 226. We granted certiorari to consider whether the State's appeal was timely filed, and held that it was not. *Id.*

The State argued that its appeal was timely even though the notice was filed more than 30 days after the July 24, 1986 order of the District Court disposing of the case. *Id.* In support of that argument, the State relied on Chapter 49 of the Acts of 1976, which enacted both Section 12–401, providing the State with the right to appeal from a final judgment in a district court criminal case, and Section 12–302(c)(2), giving the State the right to appeal from a final judgment in a circuit court criminal case. *Id.* at 573, 556 A.2d at 228. According to the State, Chapter 49 codified our decision in *State ex rel. Sonner v. Shearin,* 272 Md. 502, 325 A.2d 573 (1974), where we indicated that the State could take an appeal from the order denying the motion to correct an illegal sentence, and that the thirty-day period for filing an appeal ran from that order. *Id.* at 574, 556 A.2d at 228.

We rejected the State's argument, instead concluding that the language of Sections 12–401 and 12–302 clearly demonstrated that the State could take an appeal only from a "final judgment" in a district or circuit court criminal case, and that the denial of a motion to correct an illegal sentence is not a final judgment. *Id.* at 575–76, 556 A.2d at 228–29. A final judgment in a criminal case, we noted, "consists of the verdict and, except where there is an acquittal, the sanction imposed, which is normally a fine or sentence of imprisonment or both." *Id.* We explained that a motion to correct an illegal sentence, on the other hand, "is in the nature of a collateral attack" and "[a]n appeal from its denial is not a direct appeal from the original sentence." *Id.* at 576, 556 A.2d at 229. In Chapter 49

respect to the time for filing an appeal, Section 12–401(c)(1) stated, "Except as provided in paragraph (2), an appeal shall be taken by filing an order for appeal with the clerk of the District Court within 30 days from the date of the final judgment from which appealed."

of the Acts of 1976, the General Assembly "legislated with respect to direct appeals from judgments in criminal cases;" it did not "authorize an appeal from the denial of a motion to correct an illegal sentence" filed pursuant to Maryland Rule 4–345(a). *Id.* Thus, we concluded that under Section 12–401 of the Courts and Judicial Proceedings Article, the only order of the District Court from which the State could appeal was the July 24, 1986 order imposing sanctions upon Telak, not the later order denying the State's motion to correct an illegal sentence filed pursuant to the Maryland Rules.

*Telak* demonstrates that the State may not circumvent the legislatively-mandated 30 days for noting an appeal from a final judgment in a criminal case by filing, beyond thirty days after entry of the final judgment, an appeal from an order denying a motion to correct an illegal sentence. Similarly, in the present case, the State may not evade the limitations placed upon its ability to appeal Mateen's sentence in Section 12–301(c)(2) by challenging the legality of his sentence on appeal with an argument that is in the nature of a motion to correct an illegal sentence pursuant to Maryland Rule 4–345(a).

Our inquiry, however, is not at an end, for it is well established that a court may correct an illegal sentence on its own initiative and at any time, even upon appeal. *See Ridgeway v. State*, 369 Md. 165, 171, 797 A.2d 1287, 1290 (2002); *Griffiths*, 338 Md. at 496, 659 A.2d at 882. Indeed, in *Boyd v. State*, 321 Md. 69, 73–74 n. 2, 581 A.2d 1, 3 n. 2 (1990), this Court *ex mero motu* ordered the trial court to correct an illegal sentence upon remand. The defendant in that case was convicted of first degree murder, attempted murder, and conspiring to dynamite her husband's car. *Id.* at 73, 581 A.2d at 3. She was sentenced to life imprisonment without the possibility of parole on the murder conviction and was given concurrent life sentences for the remaining convictions. *Id.* at 73, 581 A.2d at 3. The issue before us was whether the trial judge erred in refusing to recuse himself. *Id.* at 71, 581 A.2d at 1. In dicta, we pointed out, even though the petitioner had

not raised the issue, that "the sentence of life imprisonment for the crime of attempting to dynamite a vehicle exceeds the statutory maximum of 20 years imprisonment . . . and is, therefore, an illegal sentence." *Id.* at 73–74 n. 2, 581 A.2d 1, 3 n. 2. We then stated that we expected the trial court to correct the sentence "after the case is remanded pursuant to our mandate." *Id.*

 The imposition of the illegal sentence in *Boyd* was appealable by the defendant because it would have subjected her to greater punishment than was allowed under the law for the crime that she committed. Contrastingly, Mateen's 50–year sentence in the present case is an illegal sentence, but one for which, as previously discussed, the State has no right to challenge on appeal. We cannot do indirectly what the State could not ask for directly.

## III. Conclusion

We have concluded that Mateen's sentence is 50 years in prison. The Circuit Court's commitment order and the DOC's sentence change report indicating that Mateen's sentence is life with all but 50 years suspended, are of no legal force or effect. Upon remand, the Circuit Court must issue a new commitment order indicating the length of Mateen's sentence as 50 years, commencing September 9, 1972, and the DOC must respond accordingly, by considering Mateen as an inmate with a 50 year sentence, rather than as an inmate with a life sentence with all but 50 years suspended.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. RESPONDENTS TO PAY COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS.*

Dissenting opinion by WILNER, J., in which RAKER and CATHELL, JJ., join.

With respect, I dissent. The Court in this case mandates a sentence that it acknowledges is flat-out illegal. That, alone, is extraordinary. Stranger yet are the bases on which it reaches that result. It seemingly applies the rule of lenity to wipe away a legal sentence in favor of an illegal one, for which there is utterly no authority or logic.[1] In substituting its judgment on a purely factual matter for that of the trial court—what sentence was actually imposed by the judge—it gives greater credence to the shorthand hearsay script of an unknown clerk than to the recorded statement of the judge who imposed the sentence. And, ignoring the fact that the Circuit Court denied relief to the defendant, who is the appellant here, it holds that the illegal sentence, which the trial court found was never imposed, must be sustained because the State is not allowed to appeal it.

The relevant facts are really quite simple. In January, 1973, having been convicted of first degree murder, Muhsin R. Mateen, then known as Jerome Williams, was sentenced by Judge Marshall Levin to life imprisonment, the sentence to date from September 9, 1972. The governing statute at the time allowed only two possible sentences for a person convict-

---

1. The Court states that it granted *certiorari* to consider two issues raised in Mateen's *pro se* petition and one question added by the Public Defender. It never does address the issue raised by the Public Defender, which challenged certain Division of Correction classification rules as being *ex post facto* enactments. The questions raised in Mateen's petition were: (1) "Was Judge Levin's sentence ambiguous and under the rule of lenity should [it] be construed as fifty years from September 9, 1972," and (2) "Was petitioner deprived of due process rights and a hearing on his writ of habeas corpus based on court errors." The Court states that it is not reaching the due process issue because of its holding that the "properly entered sentence was for 50 years." As the only basis for reaching that conclusion under the grant of *certiorari* was that the sentence was ambiguous and, under the rule of lenity, should be construed as a sentence of 50 years and as the Court did not add any other issue on its own initiative, I presume that the Court applied the rule of lenity in reaching that conclusion, even though it never again mentions that rule. That is another of the many puzzling glitches in the majority Opinion.

ed of first degree murder—death and life imprisonment. A death sentence was not possible because the statute allowing it had been declared unconstitutional by this Court. Accordingly, only one sentence was legally permissible—the one he received. Judge Levin said at sentencing, "Mr. Williams, the law leaves me no alternative. There is no longer the death penalty. Accordingly, the sentence ... is you be sentenced ... for the rest of your natural life." The sentence, as recorded by the clerk, was that Mateen be committed to the jurisdiction of the Commissioner of Correction commencing on September 9, 1972 for the "balance of his natural life."

It is not clear whether Mateen appealed his conviction— there is nothing in the record to indicate that he did.[2] At some point, however, he began filing post conviction applications. His third one was filed in 1981. In that application, he complained that Judge Levin had failed to consider whether any part of his life sentence should be suspended, which, in *State v. Wooten*, 277 Md. 114, 352 A.2d 829 (1976), we held was permissible. In October, 1981, Judge Pines granted the application in order to permit Judge Levin to consider whether any part of the life sentence he had imposed should be suspended. The case was returned to Judge Levin for one purpose and one purpose only—to consider whether, in light of *Wooten*, any part of the life sentence should be suspended. Life imprisonment remained the only legally permissible sentence.

---

**2.** In his reply to the State's answer to his petition for habeas corpus, Mateen claims that, "[i]n the original criminal case," he was tried with a co-defendant, Roosevelt Sneed, and references an appeal, *Williams v. State*, 50 Md.App. 255, 437 A.2d 665 (1981). Although that case did involve someone by the name of Jerome Williams, it is not likely that Mateen was the Jerome Williams involved in that case. The appellants' brief in *Williams* indicates that the murder of which Williams and Sneed were convicted was committed in May, 1979, and that the two were tried, the first time, by Judge (now Chief Judge of this Court) Robert M. Bell, in April, 1980, and, following a mistrial, by Judge Dorf in June, 1980. Unless Mateen somehow escaped, of which there is no evidence, he would have been in prison under Judge Levin's 1973 sentence at the time of those events. If Mateen is confused about which murder he committed, when he committed it, and who tried him, his confusion regarding Judge Levin's sentence is not remarkable.

The Legislature had not changed the statute to allow any lesser sentence.

There is no longer available a transcript of the subsequent proceeding before Judge Levin. All that we have to indicate what happened are two documents emanating from the clerk's office. The actual docket entry, of which only a second-hand reference appears in the record extract, recites, "Change of sentence hearing. Judgment. Fifty (50) years c/o DOC dating from 9–9–72." From that docket entry, the clerk of the court signed a commitment record stating that Mateen was committed to the jurisdiction of the Commissioner of Correction commencing on September 9, 1972, for a period of "Fifty (50) years." Who prepared the docket entry, from which the commitment record was taken, is unclear. In conformance with the commitment record, the Division of Correction initially, and probably routinely, prepared a "Sentence and Detainer Status Change Report" showing that Mateen's sentence had been "reduced" on March 19, 1982, from life to 50 years.

Only two possible conclusions can flow from these facts. Either the docket entry, and thus the commitment record that was prepared from it, was incorrect or Judge Levin—an experienced, competent trial judge, well-versed in criminal sentencing, who had already acknowledged that he had no authority to impose any sentence other than life imprisonment—nonetheless took leave of his senses and imposed a 50–year sentence that he knew was illegal. Given these two possibilities—even if that were *all* that the record revealed—I would have not the slightest hesitation in concluding that the docket entry was clearly in error. But that is not all that the record reveals.

In October, 1982, the Chairman of the Parole Commission, puzzled by the Division of Correction's change of status report, wrote to Judge Levin seeking clarification. In his letter, the Chairman noted that the Code required a life sentence for first degree murder, and he inquired whether it was Judge Levin's intent "to sentence [Mateen] to life imprisonment and suspend all but 50 years or was [Mateen] found guilty of a

lesser count and sentenced to 50 years incarceration?" Judge Levin replied, stating clearly that "it was my intention to sentence him to life and suspend all but fifty years." Based on Judge Levin's letter, the Division of Correction prepared a new, corrected change report to reflect the sentence as "Life suspend 50 yrs."

Mateen, of course, was not happy, so, on April 1, 1984, he wrote to Judge Levin, inquiring about the sentence. Judge Levin responded five days later, again making very clear what he had done:

> "The sentence I gave you at your resentencing on March 19, 1982 was life with all but fifty years suspended. Under Maryland law when a person is found guilty of first degree murder the judge *must* sentence him to life imprisonment. However, the judge can suspend part of that sentence, which I did in your case. Your commitment order has been rewritten by the clerk's office in order to reflect what I stated above and remove any confusion that exists about your sentence."

A copy of Judge Levin's letter was filed with the clerk and, based on it, the Clerk prepared a new, corrected Commitment Record, stating:

> "As result of a Post Conviction Proceedings ruled on by Judge Pines, that, Jerome A. Williams be remanded to this court for *Re–Sentencing* by Judge Levin in this case, the following sentence was handed down[:] Prisoner is committed to the jurisdiction of the Commissioner of Correction commencing on 9 September 1972 for a period of SENTENCE CHANGED TO READ: Balance of Natural Life and all but Fifty (50) years suspended."

Not satisfied, Mateen again wrote to Judge Levin, on November 23, 1984, seeking clarification. Judge Levin responded on December 13 that clarification really was not needed. He reiterated that he had imposed a life sentence and suspended all but 50 years. In 1990, Mateen wrote to Judge Levin for the third time, and, for the third time, Judge Levin responded that "your actual sentence was amended in 1982

from 'life,' to 'life, with all but 50 years suspended,' to commence on September 9, 1972."

Four times, Judge Levin, in writing, made absolutely clear that the effective sentence was life imprisonment, with all but 50 years suspended. Based on that pronouncement, the clerk issued a revised commitment showing that to be the sentence. In so doing, the Court effectively corrected the clearly erroneous docket entry, as this Court acknowledges the trial court had the authority to do. It is the only possible construction consistent with (1) law, (2) common sense, and (3) what Judge Levin said he had done. Yet this Court, raising to the height of Mt. Sinai the initial cryptic and clearly erroneous docket entry of an unknown clerk, does not believe Judge Levin. It gives no weight to what he said four times he had done. It gives no weight to the fact that, if indeed, he actually imposed the illegal sentence of 50 years in 1982, that illegal sentence the erroneous docket entry was corrected when, in conformance with Judge Levin's letter to Mateen, which was filed in the record, the clerk issued a revised commitment record in 1984. In some form of misguided empathy for a first degree murderer, this Court concludes that Judge Levin either was not telling the truth or that he did not know what he was doing. That, to me, is unacceptable. There is no rational basis in this record to conclude that Judge Levin imposed a sentence of 50 years—a sentence he knew would be illegal and a sentence that, on four separate occasions, he said he did not impose.

The Court's descent into Wonderland proceeds further with its analysis of why the illegal sentence that was never, in fact, imposed cannot be corrected—because the State has no right to appeal from it. The Court acknowledges that § 12–302(c)(2) of the Courts and Judicial Proceedings Article permits the State to appeal from a final judgment in a criminal case if "the trial judge failed to impose the sentence specifically mandated by the code." Notwithstanding its recognition that the only legally permissible sentence, in both 1972 and 1982, was life imprisonment, the Court holds that, because the law permitted Judge Levin to suspend all or part of that

sentence, it really was not a sentence "specifically mandated by the code." That, to me, is utter sophistry. The fact that *execution* of the only permissible sentence, or part of that sentence, may be suspended does not make the sentence itself any less mandated. When a judge imposes a sentence and suspends execution of all or part of it, the effective sentence is and remains what the judge has imposed. Suspension of execution merely allows the defendant to serve part of that sentence outside the prison walls. *See Moats v. Scott,* 358 Md. 593, 594–97, 751 A.2d 462, 463–64 (2000). The effect of the Court's pronouncement in this case is that, unless the Legislature has specifically precluded suspension of a sentence, there are no more mandated sentences in Maryland for purposes of § 12–302(c)(2). In its convoluted reasoning, the Court has effectively repealed that statute.

Judges Cathell and Raker have authorized me to state that they join in this dissent.

RAKER, J., dissenting.

The dissenting opinion written by Judge Wilner sets out a full basis for rejecting the holding and analysis of the majority. I join his opinion in full. I write separately to add a few observations about the majority analysis and also to emphasize that the rule of lenity is inapplicable to what I believe is a mandatory sentence.

Without answering the certiorari questions,[1] the majority holds that the State may not challenge this illegal sentence on appeal and that the Circuit Court's commitment order and DOC sentence change is of no legal force or effect. *See* maj. op. at 23. I believe this holding is both wrong and unfair. It is unfair because without a hearing and without giving the

---

1. The majority sets forth the following two questions petitioner presented in his certiorari petition:
 I. Was Judge Levin's sentence ambiguous and under the rule of lenity should [it] be construed as fifty years from September 9, 1972?
 II. Was petitioner deprived of due process rights and a hearing on his writ of habeas corpus based on court errors?

State the opportunity to argue the issue or to even respond, the Court, *sua sponte*, determines that the State does not have a right to appeal this admittedly illegal sentence. The majority is wrong because the sentence of life is a mandatory sentence; if a trial court imposes anything but a life sentence under the circumstances presented herein, the sentence is unlawful and the State has a right to appeal.

A mandatory sentence is one where, regardless of any other circumstance, a judge is required to impose a particular sentence. In Maryland, the Legislature has mandated that the required sentence for first degree murder shall be life imprisonment. *See* Maryland Code (1957, 1971 Repl.Vol.) Art. 27, § 413 (re-codified at Maryland Code (2002) § 2–201(b) of the Criminal Law Article). The trial judge is forced to impose that sentence. As Judge Wilner points out, "[t]he fact that *execution* of the only permissible sentence, or part of that sentence, may be suspended does not make the sentence itself any less mandated." Diss. op. at 6–7. The fact that this Court has said that a trial judge may suspend a portion of that sentence does not transform the sentence into one that is discretionary. *See State v. Chaney,* 375 Md. 168, 825 A.2d 452 (2003) (pointing out that "one must pass a sentence before one can suspend it").

The mandatory sentence in this case may be contrasted with a mandatory-minimum sentence. *See e.g.,* Maryland Code (2002) § 4–205 of the Criminal Law Article, captioned "Other limitations on sentencing." A sentence that is a mandatory minimum sentence is one in which the judge has no authority to make a downward departure from a statutory minimum. Therefore, the trial judge may not suspend a portion of such a sentence if doing so would reduce it below the mandatory minimum. It is true, therefore, that a trial judge has more latitude with regard to the execution of a mandatory sentence than the execution of a mandatory minimum sentence. Although execution may be subject to the trial court's deference, the sentence itself is nonetheless mandatory.

Moreover, to the extent that the majority relies on the rule of lenity to justify its result, the majority is wrong because the rule of lenity has no application whatsoever to the issue before the Court. *See* maj. op. at 397 (stating that "[i]f there is doubt as to the penalty, then the law directs that his punishment must be construed to favor a milder penalty over a harsher one"). The rule of lenity is inapplicable to a mandatory sentence.

Accordingly, I dissent.